WILLIE RANSOM

*v.*

H. G. HILL COMPANY et al.

(*Nashville,* December Term, 1958.)

Opinion filed July 27, 1959.

J. F. DOTY and THOMAS O. H. SMITH, Nashville, for appellant.

JOSEPH G. CUMMINGS and HOWARD, DAVIS, BOULT & HUNT, Nashville, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This is a workmen's compensation case. The trial judge found in favor of the employer and insurance carrier but made no finding of fact. He merely stated in his order that:

"* * * the Court finds the issues joined in favor of the defendants and against the petitioner."

The obvious reasons for such a finding will hereinafter be referred to.

The petitioner is a Negro man, 54 years of age, and was employed as a truck driver for H. G. Hill Company, a retail grocery chain store. The warehouse and parking area for the truck was located at 2nd Avenue North and Whiteside Street, near the business district of Nashville, and enclosed by a wire fence. The petitioner's duties were to deliver merchandise from the warehouse to two retail stores located in the west end section and on the return trip to haul trash from these two stores to a dump, and then report to the warehouse for such other work in the way of hauling special orders to any store or to help load trailers. He usually finished serving the two regular stores by about 1:00 p.m. and then when there were

no specials to haul or trailers to load he just stood around the yard. He worked from 6:30 a.m. until 3:30 p.m. punching the clock upon starting his work and punching the clock when he quit. On the day of this accident there were ten or twelve drivers doing similar work who stood around in the yard after making their regular runs, as did the petitioner, and the only instructions the petitioner had from his boss was to what he could or could not do while standing around waiting for work assignments after completing his run. This instruction was not to leave the lot.

■ On June 3, 1958, the petitioner finished his regular run about 1:00 p.m., came in and parked the truck and began standing around waiting to be assigned some work or for quitting time. He had been sitting in his car, which was parked on the enclosed lot where the truck is parked, and while there talked to another employee about a ten cent contribution to the church. This employee to whom he talked left the car where he was talking to the petitioner and in a few minutes the petitioner got out of his car and walked in the same direction as this other employee had gone, going over to a shed where other drivers were sitting, and when he had almost caught up with this other employee, he told the investigator for the insurance carrier that:

"After I got inside the salvage yard I grabbed McDonald Jones by the seat of the britches. He faked to the left and to the right and then he shot straight ahead and this kind of threw me off balance, and I made a wrong step. I don't know that I stepped on anything. It all happened so fast. When he saw I had fell, he came over and helped me up and I couldn't stand up because my leg buckled on me."

The petitioner suffered sores on his feet which bothered him in his work and he claims in his testimony which is somewhat contrary to the statement above, that he stepped on a rock or something and fell. As a result of this fall the petitioner suffered injury to his right knee, a comminuted fracture of the thigh bone involving the joint from which he spent 56 days in the hospital running up quite a tremendous bill. He also developed exuberant callus at the fracture site and at the time of the trial there was a question of whether or not the fracture was solid. The petitioner says that he has not been able to work or do anything since he was thus disabled.

Under the above state of facts the trial judge in finding in favor of the defendant apparently based his decision upon his feeling that the petitioner at the time of the injury was engaged in horseplay or skylarking, and that thus the accident and resulting injury did not arise out of his employment. In other words, petitioner had departed from his employment at the time he participated in the skylarking and horseplay.

This Court in 1930, in an opinion prepared for the Court by the late Chief Justice Grafton Green, held that the non-participating victim of horseplay may recover compensation. *Borden Mills v. McGaha,* 161 Tenn. 376, 32 S.W.2d 1039. In this case the claimant was sitting on a box which was pushed by a coemployee in fun and the claimant received injury. This rule is now established and followed by the overwhelming majority of the courts in these compensation cases. A year later this Court speaking through McKinney, J., held that the "aggressor defense" was applicable in a workmen's compensation case and that the "aggressor" or more properly

termed "instigator" could not recover. *Hawkins v. National Life & Accident Ins. Co.,* 164 Tenn. 36, 46 S.W. 2d 55. In this case a young athletic salesman for National Life & Accident Insurance Company had returned to enter his car. He attempted to show his prowess in leaping over the hood of the car and in doing so he caught his foot and was injured. This Court held in that kind of a case that the instigator or aggressor there could not recover. Thus it is that we have the two horseplay or skylarking cases in this State. Upon these two cases being presented to the trial judge his obvious determination from the factual situation above set forth was that the petitioner here was the instigator by grabbing his fellow employee by the seat of the pants. Thus under the rules of the Hawkins case he was not entitled to recover.

We are convinced that a different rule or what might be termed a modification of the rule as applied in the Hawkins case applies herein.

This aggressor defense as applied in the Hawkins case, supra, probably had its foundation in New York in the case of *Frost v. H. H. Franklin Mfg. Co.,* 204 App. Div. 700, 198 N.Y.S. 521, as affirmed by 236 N.Y. 649, 142 N.E. 319. The by-play in that case was called a voluntary stepping aside from the employment and thus compensation was denied. Since this case many inroads have been made by the courts of the various States, including those of the New York court who enunciated the rule. Judges Cardozo and Pound in the original case referred to here voted for the rule, later when a case developed under a related set of facts to those in the case now before us, these two same Judges joined the

majority in voting in favor of compensation. *Miles v. Gibbs & Hill, Inc.*, 225 App.Div. 839, 232 N.Y.S. 818, affirmed in 250 N.Y. 590, 166 N.E. 335.

A full discussion of "horseplay", and a thorough and sensible one is found in Section 23.00, Volume 1, Larson on Compensation. The writers and students of workmen's compensation are to a great extent suggesting the abolition of the rule as applied in the Hawkins case, supra. Mr. Larson in his work just above referred to, at page 352, quotes from Horovitz on the subject as follows:

"The more recent and better rule is to allow an award for an injury resulting from horseplay, even to aggressors, where the injury is a by-product of associating men in close contacts, thus realistically recognizing the 'strains and fatigue from human and mechanical impacts'."

On page 353, Section 23.50, Larson quotes from a New Hampshire case as follows:

"The pipe company knew as a matter of common knowledge that there might be brief lapses from duty on the part of its employees as in horseplay, kidding and teasing. *Hartford [Accident] & [Indemnity] Co. v. Cardillo*, supra, 72 App.D.C. 52, 112 F.2d 11, at page 16. Such lapses are conditions incident to the service, and for this Court to hold that an injury arises out of the employment if it is inflicted on a workman attentive to duty by the sportive conduct of a fellow-employee (our case of *Borden Mills v. McGaha*, supra), but that it does not so arise if the injured workman participates, however slightly, in the sport is to draw

a distinction based on the injured workman's fault, when the only faults specifically named in the statute as precluding recovery are intoxication, violation of law, and serious or wilful misconduct." [*Maltasis v. Equitable Life Assur. Soc. of United States*, 93 N.H. 237, 40 A.2d 837].

This last quoted statement certainly jibes with and fits our Workmen's Compensation Act wherein Section 50-910, T.C.A., these, as mentioned in the New Hampshire decision, were faults specifically named which would exclude recovery.

The rule adopted in the Hawkins case, supra, is really based on the fact that the participant is the one who commits an assault rather than mere horseplay. Larson, at page 354, Section 23.50 on this question has this to say:

"While assaults and horseplay have some features in common, they also have some differences which make it doubtful whether the reasoning of assault cases can be taken over bodily and applied to horseplay. This reasoning pictures the day-to-day enforced contact of divergent personalities under the strains of industrial life, with the not improbable culmination in flare-ups of temper as a direct result of this environment. There is something relentless and inescapable about the emotional explosion that is thus ultimately thrust upon the claimant 'aggressor' virtually against his will. But in a horseplay case, the most you can say is that the employment environment provides temptation and opportunity, rather than implacable emotional pressure. Hence, when a prankster sets out to play a practical joke, there is a higher probability that the action may

amount to a deliberate and conscious deviation from employment than in the assault cases, in which almost every instance of violence is a spontaneous and unpremeditated reaction to the play of the surroundings on the claimant's temperament.''

In answer to the main defense upon which compensation was denied here that this accident did not arise out of the employment, Larson has this to say at page 355, Section 23.61, which seems to us to answer the question entirely. He says:

''The essence of the controversy in horseplay cases is the ambiguous nature of claimant's own conduct, which may or may not be called a departure from his employer's business. The 'arising out of employment' issue, once you have concluded that the horseplay activity itself was no departure from the employment, can usually be easily disposed of. In the great majority of the cases, there is some distinct contribution to the injury by the environment, in the form of air hoses or other instrumentalities; and even when this is not true, the 'arising' test can be simply met by the argument that if the activity itself qualifies as part of the employment, and the harm arises out of that activity, then the harm arises out of the employment of which that activity was a part.''

And he says further on page 356:

''If an employee momentarily walks over to a co-employee to engage in a friendly word or two, this would nowadays be called an insubstantial deviation. (Citing *Schexneider v. Gen. Amer. Tank Car Corp.*, 5 La.App. 84.) If he accompanies this friendly word

with a playful jab in the ribs, surely it cannot be said that an entirely new set of principles has come into play. The incident remains a simple human diversion subject to the same tests of extent of departure from employment as if the playful gesture had been omitted.''

Of course in approving these statements of Larson, he does not nor do we undertake to hold that all practicable jokesters who commit these things of necessity have not under their actions in effect abandoned their employment, but so long as the things done are the natural and normal thing of the type the employees who are kept there, as these were in this lot, it seems to us that they clearly have not left their employment.

When we have the insubstantial deviations such as one employee asking another for a dime and then playfully grabbing the seat of his britches when he walked off and as a result of that slipping and falling, such an insubstantial deviation is not such a deviation as would take the person or cause any accident happening therefrom not to arise out of and in the course of his employment. We think that when these employees are hired and directed by their boss to stay in this lot subject to call, or what not, that the employer knew or had a right to know and suspect that certain incidents of the kind should happen and that this is such a slight or insubstantial deviation that it is not getting away from the employment. We are constrained to hold that an accident of the kind does arise out of the employment.

As Mr. Larson says, on page 359 of his work, supra:

"In short, there should really be no controlling difference between the claimant who falls into a hole because he is walking along day-dreaming with his head in the clouds and the claimant who falls in the same hole because he is running, or skipping or turning handsprings on his way to his destination. Both are doing their jobs in a thoughtless way."

■ The cases by no means are in harmony. Many of the courts blindly follow rules established by preceding cases without applying a rule to the factual situation of the case before it. The Workmen's Compensation Law, as has always been said in this State, was made for the benefit of the injured workman and must be considered liberally in his favor by us.

In a dissenting opinion in a New York case (*Ognibene v. Rochester Mfg. Co.,* 298 N.Y. 85, 80 N.E.2d 749, 751), it was said:

"To say that this claimant, by this trifling act of foolery, stepped completely out of his role of workman and became an aggressor in an encounter during which he was hurt, would be to magnify unfairly what was a most insignificant antic."

This appraisal, above quoted from the New York Judge, has the blessing of Mr. Larson in his work on page 365, when he said:

"It is submitted that Judge Desmond's appraisal of such incidents as 'insignificant antics' not to be magnified into a constructive abandonment of the employment, is the only interpretation of the Act which is

consistent with the law of insubstantial deviations in other fields.''

Lastly we quote the following paragraph from Larson, supra, at page 366. It seems to us that the logic of this statement is unanswerable when applied to a factual situation as that in the case now before us. He says:

"If the primary test in horseplay cases is deviation from the employment, the question whether the horseplay involved the dropping of active duties calling for claimant's attention as distinguished from the mere killing of time while claimant had nothing to do assumes considerable importance. There are two reasons for this: first, if there were no duties to be performed, there were none to be abandoned; and second, it is common knowledge, embodied in more than one old saw, that idleness breeds mischief, so that if idleness is a fixture of the employment, its handmaiden mischief is also.''

He then goes on to review a number of cases on the question here involved, citing and quoting from some cases adopting the same theory that he is enunciating herein which seems to us the only sound and logical season to follow in administering compensation law. He quotes from the Missouri Court of Appeals, 227 Mo.App. 1217, 61 S.W.2d 764, 766, thus:

"Employers, whose work requires that men wait upon the job for work conditions, ought not to be heard to say that an accident, occurring out of the very conditions presented by the required waiting, is not compensatory. Men standing and waiting around an open fire on a damp December day naturally mill around

and talk and even joke and indulge in what might be termed 'horseplay' ''.

Thus we have quoted at length from an authority on the subject whose ideas are based on cases and reason. It seems too that these ideas are sensible and bear fruit in enforcing our compensation law as it was meant to be enforced when enacted by the Legislature of this State. Thus it is we feel that the injury and accident in this case did happen in the course of and arise out of the employment of this petitioner. Having reached this result it is necessary that the case be remanded to the trial court for the fixing of the compensation according to the statute in view of the injuries herein received.