60 N.J. Super. 424 (1960)
159 A.2d 462
ANGEL M. DIAZ, PETITIONER-RESPONDENT,
v.
NEWARK INDUSTRIAL SPRAYING, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 23, 1960.
*425 Mr. Joseph P. Dunn argued the cause for the petitioner-respondent (Mr. Francis H. Pykon, on brief).
Mr. Isidor Kalisch argued the cause for the respondent-appellant.
CONKLIN, J.C.C.
Respondent Newark Industrial Spraying, Inc., has appealed from an adverse determination of law centering around an alleged "skylarking" incident involving petitioner Angel M. Diaz and another employee on *426 November 20, 1957. The incident occurred on respondent's premises during the normal working hours, but respondent's version of the mishap sharply differs from that of the petitioner.
Although for the purposes of this appeal the factual determination as made by the Deputy Director below is more favorable to the respondent and he is not urging a new determination of the facts in this court, petitioner contends that this court should make a determination more in its favor which would avoid the necessity of considering the legal issue to any extent. Consequently, this court as its duty will apply a new mind to the evidence and make an independent determination of the factual issues.
The hearing below took place on December 17, 1958, February 18, 1959 and August 6, 1959. The first two days were devoted to testimony as to the circumstances surrounding the accident, after which the Deputy Director requested that briefs be submitted to assist him in his deliberations. After the Deputy Director's findings were made known, the case was assigned to another Deputy Director for the taking of testimony and for a finding as to the extent of petitioner's disability on the final hearing date of August 6, 1959.
With regard to the circumstances surrounding the accident, petitioner presented himself and two other witnesses who were at the scene.
Petitioner, through an interpreter, testified that he had been employed as a general laborer for 19 months prior to the incident, and on the day of the accident he had been cleaning some "cabinets" or "frames" with lacquer thinner. He stated that his clothes had become saturated with the thinner as a result of such work and subsequently he had been put to work washing the frames with a water hose near a tank which had an open flame beneath it, and that his clothes were ignited, causing extensive burns to his body. Petitioner denied having ever squirted one of his co-workers, named Frank F. Waters, or that Waters had thrown lacquer thinner on him as a reprisal for the alleged squirting.
*427 The remainder of petitioner's case consisted of the testimony of two of his coemployees, Abraham Bettencourt and Ernesto Fuentes, who were working in the same vicinity on the day of the accident. However, the probative value of their testimony even with respect to the absence of any squirting incident is negligible in view of the fact that they did not personally observe petitioner's actions immediately before his clothing burst into flames.
Respondent's first witness was Frank F. Waters, another employee who had been working near petitioner at the time of the accident. Waters testified that he had just set some cans containing lacquer thinner down on the floor, and while in a stooped position seven or eight feet away and with his back to petitioner, he felt some water strike his leg. Assuming that he had been sprayed with the hose with which petitioner had been working, Waters turned around and apparently without any ill will said in English, "I will give you a bath, too." Waters further testified that he resumed his original position and was washing his hands when he was again doused with water from the waist down. At this point Waters said that he then grabbed what he thought was a water can and threw its contents at petitioner, whose back was then turned to Waters. The liquid, which in reality was lacquer thinner, struck petitioner, and Waters started to walk away. At this time, according to Waters, both he and petitioner were either smiling or laughing. Waters said he then "heard a puff" and saw that petitioner was on fire.
When pressed as to whether he knew in fact that the water which had struck him on both occasions had come from the hose petitioner was using, Waters said that he did not actually observe petitioner spray him and that he could not say for sure from where the water had actually come. He also admitted that the hose connection at the spigot approximately ten feet away occasionally leaked and sprayed water upwards, but he hadn't seen it happen that day. In addition, Waters indicated that he could not say whether *428 the petitioner understood the remarks he had made to him at the time of the accident, and that he was in the habit of using "sign language" in communicating with him.
The testimony of respondent's second witness, Joseph Evans, from a quantitative standpoint is quite lengthy due to many unresponsive answers by the witness stemming from his failure to understand counsel's questions both on direct and cross-examination. Suffice it to say, however, that Evans testified that petitioner did squirt Waters with the hose and that Waters in retaliation threw the liquid contents of a can at the petitioner and that petitioner's clothing was ignited by an open flame under a nearby tank.
Respondent's third and final witness on the issue of liability was Patrick J. Frain, secretary of the respondent. Frain testified that it was his duty to make out reports of compensation claims for the respondent company, and as far as he knew there had been no compensation paid to the preceding witness Evans and no claim for compensation had been made for an injury he sustained while pulling petitioner's burning jacket off at the time of the accident.
Advanced on this evidence are three theories of what actually transpired. First, petitioner's clothing became wet with lacquer thinner as the result of some work he himself had been doing just prior to the accident; second, petitioner was the innocent recipient of a splashing of thinner by Waters without instigation on the part of petitioner; and third, petitioner instigated the incident by twice spraying Waters with a water hose and the thinner was thrown in retaliation by Waters.
Assuming for the moment that the first version is accepted, there can be little doubt that petitioner's injuries were the result of an accident arising out of and in the course of petitioner's employment and would be compensable. If the second version is accepted, the Legislature by the following statute has specifically provided that such accidents are compensable:
*429 "An accident to an employee causing his injury or death, suffered while engaged in his employment but resulting from horseplay or skylarking on the part of a fellow employee, not instigated or taken part in by the employee who suffers the accident, shall be construed to have arisen out of and in the course of the employment of such employee and shall be compensable under the act hereby supplemented accordingly." N.J.S.A. 34:15-7.1
If the third version of the facts is accepted, then the problem arises as to whether the above cited statute impliedly denies compensation to other participants involved in skylarking incidents; and if there by no such implied denial by this statute, a further question arises as to whether the other provisions of the Workmen's Compensation Act have been construed so as either to deny or allow compensation in such cases.
The test to be applied by the court in selecting from among the three tendered hypotheses is probability and not certainty. That is to say, the selected hypothesis is required to be a probable or more probable hypothesis with reference to the possibility of the others tendered and the one in favor of which the evidence preponderates. The probabilities must be weighed according to the common experience of mankind and in all likelihood be the fact. Yeomans v. Jersey City, 27 N.J. 496 (1958); Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939).
In view of the sharply conflicting testimony at the hearing below, reasonable probability and the credibility of the witnesses must of necessity play an important part in the resolution of the factual issue.
The critical witnesses are three in number: petitioner denies any squirting incident or horseplay whatsoever. Frank Waters, without actual observation, assumes he was squirted and for that reason he threw the lacquer thinner at the petitioner, erroneously believing it to be water. Joseph Evans, an eyewitness to the event, substantially supports the testimony of Frank Waters.
This court, like the Deputy Director below, finds that the preponderance of the probabilities favors the contention of *430 the respondent as evidenced by the testimony of Waters and Evans. The only source from which the water with which Waters was allegedly sprayed, other than the nozzle of petitioner's hose, was the hose connection at the spigot. However, there is no evidence that on the day in question there was any leak at that point. The only conclusion which can be reached is that the water was either intentionally or accidentally directed from the nozzle end at Waters by petitioner, if it is assumed that Waters actually was sprayed.
On this last point Waters stated that within a relatively short space of time he was twice soaked with water. Evans not only confirms this fact, but also indicates that petitioner actually sprayed Waters, apparently with intent to do so.
In evaluating the testimony of Evans, the Deputy Director below suggests that a shadow is cast upon its credibility in view of Evans' responses to certain questions on cross-examination, wherein he said that he could not remember whether he had received any compensation, even to the extent of $100,000, for injuries he sustained as a result of this same accident or whether he had retained the services of an attorney for that purpose. This court, however, is of the opinion that this portion of the witness' testimony is so incredible as to indicate a basic misunderstanding on the part of the witness as to what was asked of him and perhaps its relation to the hearing. Such a misunderstanding would not necessarily cast discredit upon that portion of petitioner's testimony wherein he relates his personal observation of the events surrounding the accident, this being the basic reason he was called to testify at the hearing.
Aside from problems of credibility, the occurrence of such an event as alleged by respondent's witnesses, under the conditions described, in all human likelihood appears to be most probable.
Waters was twice wet with water within a short period of time, negativing the possibility of accidental misdirection *431 by Diaz. After the first wetting and again after the second wetting and subsequent tossing of lacquer thinner, both Diaz and Waters were either smiling or laughing. Also, the use of the water hose was apparently an integral part of the routine at respondent's establishment, and human nature being what it is, it is not at all inconceivable that passing co-workers of the user of such a hose might on occasion replace the frames as the intended target of the spray.
Having found as a fact that the petitioner was the instigator of a "skylarking" incident, the question of law arises as to whether such conduct bars compensation for injuries arising out of such incident. In this regard respondent urges that N.J.S.A. 34:15-7.1, as set forth previously, has just this effect. Petitioner, on the other hand, contends that the cited statute is not controlling and that trend of recent judicial construction of the Workmen's Compensation Act permits recovery for this skylarking incident.
Heretofore, there has been no reported judicial interpretation of the particular statute in question. The court must therefore resort to other means in an effort to determine if the intent of the Legislature was that it should have the exclusionary effect as contended by the respondent.
On its face the statute expressly makes compensable injuries sustained as the result of horseplay or skylarking by innocent bystanders. Injuries sustained by participants or instigators are neither expressly included nor expressly excluded. The doctrine of expressio unius est exclusio alterius would appear to be applicable in support of respondent's contention, but this doctrine is only a rule of construction which is not binding upon the court. In this case the court feels that to construe the statute in such a way would magnify and expand the scope of the statute beyond the reasonable expectations of the Legislature, which result had the Legislature so intended could have and would have been achieved in a more direct manner. To hold that *432 this statute itself prohibits compensation to participants in skylarking incidents would require rewriting the express language in the statute and amount to an act which is beyond the province of this court.
If N.J.S.A. 34:15-7.1 does not impliedly deny compensation, then what is the status of the law with regard to injuries sustained by participants in skylarking incidents?
It cannot be doubted that the courts of this State have held that injuries sustained as the result of horseplay are not compensable with respect to both participating and non-participating employees. Hulley v. Moosbrugger, 88 N.J.L. 161 (E. & A. 1915); Budrevie v. Wright Aeronautical Corp., 135 N.J.L. 46, affirmed 136 N.J.L. 198 (E. & A. 1947).
Today there is no question that injuries sustained by non-participating employees are compensable. The Legislature has so directed by virtue of N.J.S.A. 34:15-7.1, the statute heretofore discussed. Determinations as to the compensability of injuries sustained by participating employees must still be made through the application of the "arising out of and in the course of his employment" standard found in R.S. 34:15-7. And looking to some of the earlier decisions, it would appear that horseplay is excluded by that standard, from which it may be argued that any change in the law should be made expressly by the Legislature, just as was done in the case of non-participating employees.
But such an argument presupposes that the Legislature has set rigid guides from which the judiciary may not deviate to meet changing economic and sociological conditions. The Legislature, however, chose not to do so, and it provided the very general standard referred to above, leaving to the courts the task of filling in guidelines of construction. In accomplishing their task of construing the act, the courts are not bound to follow their prior interpretations without deviation, except to the extent that the doctrine of stare decisis affects all judicial thinking. Changes in social climate may be met by changes in judicial interpretations. To deny to the *433 courts the opportunity to alter their constructions would sap the heart and purpose of the Workmen's Compensation Act, an enactment the very purpose of which was to solve a very great socio-legal problem.
To this end it is the opinion of this court that the upper courts of this State have indicated a more liberal trend with respect to the compensability of horseplay and skylarking cases. Here reference is specifically made to Secor v. Penn Service Garage, 19 N.J. 315 (1955), and Martin v. Snuffy's Steak House, 46 N.J. Super. 425 (App. Div. 1957).
In the Secor case a garage attendant was injured when he struck a match and his clothes caught fire after they had been accidentally splashed with gasoline. The Supreme Court found the injury compensable, notwithstanding the following three alternative findings of fact: (1) the match was to be used to light a cigarette; (2) the match was lighted to show the employer that there was no danger and therefore no need of changing his clothes; or (3) the match was lighted in a spirit of mock bravado.
It is obvious from a factual standpoint that the Secor case is not in point with respect to the instant case. However, its importance arises from the following expression of the court's attitude on minor deviations from an employee's duties:
"The evidence established that, in any event, Secor's deviation from the course of his ordinary work was not an intentional abandonment of his employment but simply a `momentary or impulsive act'  it was not a `deliberate and conscious excursion' within Robertson v. Express Container Corp. [13 N.J. 342], supra. An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof. Fulfillment of the high purposes of our socially important and ever broadening Workmen's Compensation Act suggests this approach and nothing in the statutory terms indicates any narrower position." 19 N.J., at page 324.
*434 Two limitations in the above statement are apparent. First, the act to be compensable must be a "momentary or impulsive" one, as opposed to a "deliberate and conscious excursion" from the employment; and second, the deviation must be "minor" and "realistically viewed by both the employer and the employee as a normal incidence of the employment relation."
Notwithstanding these limitations, however, the Appellate Division in Martin v. Snuffy's Steak House, 46 N.J. Super. 425 (1957), found compensable an injury sustained by a waitress who was struck by a chef in a dispute over the performance of their respective duties after the waitress had slapped the chef when he used offensive language to her.
In considering the so-called "aggressor defense" in workmen's compensation, the court made the following remarks:
"We do not consider that the Legislature meant to punish a workman for a playful shove, an angry curse, or even an impulsive slap or punch, by depriving him of compensation. Where the act does not arise out of a privately motivated, purely personal feud, where it does not amount to willful misconduct or a willful intention to injure another (thereby importing premeditated and deliberate action), it is not for the court to read a new exception, covering aggressors, into the clear and unequivocal text of the Workmen's Compensation Act, R.S. 34:15-7. * * *

* * * * * * * *
The trend of authority is strongly in favor of eliminating the tort conception of the aggressor defense in workmen's compensation, and the reasons for so doing are set forth with great persuasion and logic in the cases we have cited. We consider that our Supreme Court has, in the Secor case, freshly affirmed the philosophy and scope of the Workmen's Compensation Act and pointed up its divergence from the common law tort concept." 46 N.J. Super., at pp. 441 and 442.
While neither of these cases is exactly in point, this court is of the opinion that the case at bar is engendered by their underlying philosophy and that petitioner's claim here presented is compensable. Although the conduct of the two participants in the horseplay here under consideration was not the result of a dispute concerning their employment, *435 it was not done with any malice or intent to injure and was accomplished in a sportive spirit akin to the "playful shove" mentioned in the Martin case.
The court, having found petitioner's injury to be compensable, has carefully considered all of the evidence submitted with respect to the extent of petitioner's disability and medical expenses and further finds that the award made by the Deputy Director below is in all respects fair and reasonable.
For the reasons stated above, the judgment for the petitioner is to be entered.