Southern Cotton Oil Division *v.* Childress.

5-3162                                          377 S. W. 2d 167

Opinion delivered April 6, 1964.

*Hout, Thaxton & Hout* and *Rose, Meek, House, Barren, Nash & Williamson,* for appellant.

*Pickens, Pickens & Boyce, Smith, Williams, Friday & Bowen, Robert V. Light,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a workmen's compensation case, and necessitates a review of the holdings on the matter of "horse-play"[1] or "sky-larking."

Mrs. Minnie Lee Childress seeks recovery for herself and children because of the death of her husband, George Childress, while in the employ of the appellant, Southern Cotton Oil.[2] The facts are without substantial dispute. For many years the appellant, Southern Cotton Oil has had a cottonseed oil mill at Newport. George Childress worked for the appellant for about seven years. On August 15, 1957, he reported for work about 7:00 A.M. and was assigned the job of using a compressed air hose for blowing out the vent pipes in the soybean storage shed.

Alfred Ballentine, a fellow-employee, was working that day in another room of the plant. About 2:00 o'clock

---

[1] Most of the American cases use the word, "horse-play;" and most of the English cases use the word, "sky-larking." We make no distinction in terminology.

[2] At the time of the death of George Childress, Southern Cotton Oil appears to have been a division of Wesson Oil and Snowdrift Company. Later Southern Cotton Oil appears to have become a division of Hunt Food & Industries, Inc., and is so styled in the briefs in this Court. For brevity, we merely call the appellant "Southern Cotton Oil."

in the afternoon Ballentine needed an 18″ pipe wrench and went to the soybean shed to see about getting the wrench. George Childress was then using a high-pressure air hose with a nozzle on the end of it, blowing out the vents in the storage room. As Ballentine went by Childress, one or the other made a friendly and challenging gesture. After Ballentine investigated the matter of the pipe wrench, he started out of the bean shed and passed by Childress; and they engaged in friendly scuffling and in the process of the scuffle Ballentine got hold of the nozzle of the air hose that was blowing in a continuous stream and in some way the end of the air hose was forced against the anus of the deceased and air forced into his body and as a result George Childress died. A portion of this scuffle was witnessed by Mr. Jerry Jeffrey, manager of the Company, who immediately went to the men and, finding that Childress had been injured, he made arrangements for Childress to be taken to the hospital. The company paid the medical and hospital bills that resulted from the injury. Childress died on August 18, 1957, of internal injuries, the result of the air being forced into his body.

Alfred Ballentine testified that he and George Childress had been friends for seven years; that they had scuffled there at the Southern Cotton Oil plant five or six times before that day; that there was no anger or ill feelings between them; and that it was just friendly playing. Ballentine said that when he passed by Childress enroute to see about the pipe wrench, Childress was seated in the door at work and Childress reached for him; that as Ballentine came back, Childress jumped up and went running around Ballentine with the air hose, as though to wrap it around him; that they started scuffling and Ballentine tried to get loose and Childress was trying to tie the hose around him; that they were not mad, they were just playing, and that they scuffled for a few minutes and some way in the process the air was forced into Childress' body through his anus.

Ballentine also testified that during the entire time he worked at the plant no one gave him any instructions

or warning regarding the use of the air hose; that he did not know that an air hose could injure a man seriously or kill him; that he did not know that placing the air hose near a man's rectum might kill him. Ballentine said some other employees had used the air hose to clean the lint off their clothes; and that he had never played with an air hose before. A number of other witnesses testified, but all the evidence was about to the same general effect as that heretofore mentioned. The fact remains that Childress and Ballentine, while on the job, engaged in a friendly scuffle, and as a result Childress was killed.

The Workmen's Compensation Commission refused to allow compensation.[3] On appeal the Circuit Court reversed the Commission and held that Mrs. Childress and her children were entitled to recover compensation. The Circuit Court was of the view that our case of *Johnson* v. *Safreed,* 224 Ark. 397, 273 S. W. 2d 545, changed the holding in *Hughes* v. *Tapley,* relied on by the Commission. From the Circuit Court judgment, Southern Cotton Oil prosecutes this appeal; and we are thus presented with the problem of whether there may be a recovery in a case like this one wherein a worker is injured in what is called "horse-play" or "sky-larking."

I. *The Holdings Generally.* Before considering our own cases, it is proper that we consider as background information the trend generally in "horse-play" cases. The earlier workmen's compensation cases usually held

---

[3] The opinion of the Commission reads in part: "Briefly, the facts are these. On August 15, 1957, the deceased, George Childress, and a fellow employee, Alfred Ballentine, during work hours became engaged in friendly 'horseplay' which resulted in a high pressure air hose causing serious injury to George Childress, resulting in his death on August 18, 1957. The positions of the claimants and respondent are clear, the question being whether said accidental injury comes within the purview of the Act. The case of *Hughes* v. *Tapley,* 206 Ark. 739, 177 S. W. 2d 429 (1944), involved horseplay and the court said: 'While it is true that appellant, in the instant case, has received most serious and painful injuries, he was, on the evidence presented, the unfortunate victim of his own acts, and his injuries resulting therefrom did not arise out of his employment and therefore he is not entitled to compensation.' The Commission holds that this is still the law in this State; and in the instant case, we find that the deceased was the instigator of the horseplay; that the parties here were not acting in the furtherance of the employer's business; and that the conditions of employment did not induce the horseplay."

that there could be no recovery in ''horse-play'' cases;[4] but Justice Cardozo's opinion in *Leonbruno* v. *Champlain,* 229 N. Y. 470, 128 N. E. 711, 13 A.L.R. 522 (1920),[5] is generally credited with having ushered in the modern ruling. Justice Cardozo there said:

''Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service . . . The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risk of such associations and conditions were risks of the employment.''

The courts then began to allow recovery to the innocent victim of the horseplay, but a majority continued to refuse recovery to the instigator of the horseplay if he were injured. Larson[4] states this rule:

''Injury to a non-participating victim of horseplay is compensable, but to the instigator is usually not. A few states permit recovery even by active participants in horseplay if such activity has become customary. A suggested rationalization of the rule on participants in horseplay is to treat the question, when an instigator is involved, as a primarily course of employment rather than 'arising-out-of-employment' problem; thus, minor acts of horseplay would not automatically constitute departures from employment but might here, as in other fields, be found insubstantial. So, whether initiation of horseplay is a deviation from course of employment

---

[4] Larson comments on page 343: "The modern observer may find it hard to believe that such claims were uniformly denied in early compensation law; . . ." The *Law of Workmen's Compensation* by Prof. Arthur Larson, Vol. I, page 343, § 23.10.

[5] In Vol. 13 of A.L.R. there are reported several of the leading cases on horseplay, being: *Socha* v. *Cudahy Packing Co.* (Nebr. 1921), 13 A.L.R. p. 513 (an air hose fatality, like the case at bar); *Payne* v. *Industrial Comm.* (Ill. 1920), 13 A.L.R. p. 518 (also an air hose case); *Leonbruno* v. *Champlin Silk Mills* (N. Y. 1920), 13 A.L.R. p. 522; and *Hollenbach* v. *Hollenbach* (Ky. 1918), 13 A.L.R. p. 524; and the annotation in 13 A.L.R. p. 540 *et seq.,* "Workmen's Compensation: right to compensation in case of injuries sustained through horseplay, or fooling." This annotation is supplemented in 20 A.L.R. 882, 36 A.L.R. 1469, 43 A.L.R. 492, 46 A.L.R. 1150, and 159 A.L.R. 319.

would depend on (1) the extent and seriousness of the deviation, (2) the completeness of the deviation (*i.e.,* whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.''

The trend of the recent cases has been to eliminate the distinction between instigator and victim, and to examine the real facts as to: (a) whether there was a substantial deviation from employment; (b) the extent of the horseplay; (c) whether it should have been known to the employer so as to be stopped; and (d) other factors which might tend to allow recovery to the injured party. Larson[4] has several pages devoted to these various matters. In 99 C.J.S. p. 753, ''Workmen's Compensation'' § 225,. after stating the general rule, the text states:

''An injury to an employee as a result of horseplay, skylarking, or practical joking is ordinarily compensable where the injured employee did not participate in the fun or where such activities were customary in the particular employment.''
The text then adds this:

''Other authorities go further and hold that the test of coverage by the compensation statute is whether or not the horseplay, skylarking, and practical joking that caused the injury may reasonably be regarded as an incident of the particular employment, and where it may be so regarded, an injured employee is entitled to compensation even though he was a participant.''
Schneider[6] says:

''Since a majority of the jurisdictions now award compensation to innocent or non-participating employees, and to employees whose participation is but momentary and not 'aggressive', a rule, under the broader

[6] Schneider's Workmen's Compensation, 3rd or Permanent Edition, Text Vol. 6, page 560, § 1609.

conception of the law, may be said to be that injuries sustained by an employee while in the course of his employment as a result of another's horseplay, are compensable as arising out of and in the course of his employment.

"The question of whether the aggressor should be entitled to compensation for injuries resulting from his own aggressiveness is one which must be left for future determination. The general trend, however, appears to be in that direction."

Hon. Samuel B. Horovitz, writing in 3 NACCA Law Journal 57, in 1949, said:

"Clearly, fooling at work is incidental to it, and a hazard of men working together. The more recent and better rule is to allow an award for an injury resulting from horseplay, even to aggressors, where the injury is a by-product of associating men in close contacts, thus realistically recognizing the 'strains and fatigue from human and mechanical impacts.'"

To list all the cases and Law Review articles on this matter would be a work of supererogation.[7] To sum up: the recent cases are in accord with the words of the Supreme Court of Michigan in *Crilly* v. *Ballou* (1958), 91 N. W. 2d 403, in which the Michigan Court reviewed its own earlier case denying recovery, overruled it, and said:

"We need not undertake to define the outer limits of compensability. We rule on the case before us . . . So much for the present and the future. As for the past, we specifically overrule the Tarpper case, *supra,* and subsequent cases of like character, and hold that injuries received in assaults, either sportive or malicious, are not, by reason of such fact alone, beyond the realm of

---

[7] We do mention these few in each of which recovery was allowed the injured claimant, although he might have been the instigator of the horseplay: *Diaz* v. *Newark Industrial Co.* (N. J. 1960), 159 A. 2d 462, affirmed 167 A. 2d 662; *Petro* v. *Martin Baking Co.* (Minn. 1953), 58 N. W. 2d 731; *Cunning* v. *City of Hopkins,* (Minn. 1960), 103 N. W. 2d 876; and *Ransom* v. *Hill Co.* (Tenn. 1959), 326 S. W. 2d 659. See also 65 Harvard Law Review p. 360; 37 Virginia Law Review p. 766; 34 Cornell Law Quar. p. 460; 54 Harvard Law Review p. 154; 41 Illinois Law Review p. 311; 26-27 NACCA Law Journal p. 248; and 29 NACCA Law Journal p. 239.

compensability. If arising out of the employment and received in the course thereof they are compensable."

II. *Our Own Cases.* Turning from the holdings elsewhere, we come to our own cases. There are four of these:

(1) *Birchett* v. *Tuf-Nut Garment Mfg. Co.* (1943), 205 Ark. 483, 169 S. W. 2d 574. We denied compensation to an employee, saying:

"The question here presented is a new one in this state. Decisions from other jurisdictions, while persuasive, are not conclusive. Claimant's injuries arose out of a personal difficulty which she provoked herself. The cause of the ill-feeling is immateiral. During a rest period, she entered the work room and saw a group of employees reading a document. They were not near her place of work, were not talking to her and were not molesting her in any way whatever. She went up to this group and snatched the paper, which was not hers and which she had never seen before, from her fellow employees, stuffed it in the bosom of her dress and ran away with it. She does not claim she was acting in a playful spirit. In the ensuing struggle for its recovery by the employees from whom she snatched the paper, she claims she got hurt."

(2) *Hughes* v. *Tapley,* (1944), 206 Ark. 739, 177 S. W. 2d 429. Work had temporarily stopped and Hughes intended to throw a lighted fuse near a deaf and dumb fellow employee named Turley, which would have caused the man to be frightened and jump. Hughes got a carbide light, apparently to be used in lighting the fuse; and when he placed the carbide lamp on a box of powder the lamp toppled over and Hughes was injured. He claimed compensation from Tapley, his employer. The Commission denied recovery to Hughes, and we affirmed, saying:

"This case simply and clearly presents a situation where appellant, Hughes, voluntarily stepped aside from his employment to engage in a sportive act, horseplay or

prank, or in order to frighten the unfortunate deaf and dumb Negro, Turley, and in his preparation to carry his plans into effect, he was injured, solely by his own acts. The injuries thus received did not arise out of appellant's employment.''

We then quoted from an annotation as follows:

'' 'It is generally held that no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts.' ''

(3)  *Barrentine* v. *Dierks* (1944), 207 Ark. 527, 181 S. W. 2d 485. Barrentine and a fellow employee (Parker) had a fight before lunch regarding something Barrentine might have said about Parker. After lunch, while Barrentine was getting a drink of water, Parker slipped up behind him and hit Barrentine on the head. The Commission denied recovery to Barrentine, finding that the ''assault was caused by feeling engendered from purely personal causes and had no connection with the work of the master and did not arise out of employment.'' We affirmed the Commission's findings and refusal of an award of compensation to Barrentine.

(4)  The foregoing three cases all indicate denial of compensation; but then ten years later came the fourth case, *Johnson* v. *Safreed* (1954), 224 Ark. 397, 273 S. W. 2d 545. Johnson and his fellow employee, Deloney, engaged in an affray and bitter words in the course of the work; and since Deloney was senior in point of service, the master, Safreed, discharged Johnson, who left the place of work and started to a truck to be transported to town. Deloney pursued Johnson and struck him on the head with a pick, inflicting injuries for which Johnson sought compensation from Safreed, the master. The Workmen's Compensation Commission denied recovery to Johnson, finding: (1) that Johnson was the original

aggressor in the affray; and (2) Johnson's injury did not arise out of and in the course of his employment.

This Court, in an opinion by Justice Millwee, reversed the Commission and held that Johnson was entitled to compensation. Justice Millwee reviewed the earlier cases and the present ones, saying:

"Until recently a majority of jurisdictions that had passed on the question refused compensation to an aggressor even though the dispute was work-connected . . . However, commencing with the opinion by Judge Rutledge in *Hartford Accident & Indemnity Co.* v. *Cardillo*, 112 Fed. 2d 11, cert. denied, 310 U. S. 649, 84 L. Ed. 1415, 60 Sup. Ct. 1,100, various courts began to re-examine their position and adopt the view that aggression of the claimant, without more, would not bar recovery for an injury sustained in a work-connected dispute. During the past few years the trend of the cases in line with this holding is such that it may now be said that a majority of the jurisdictions which have examined the issue favor the proposition that aggression does not bar recovery . . .

"When the foregoing principles are considered in the case at bar, we are convinced that the framers of our statute did not intend to preclude recovery where the aggressive act amounted to nothing more than a light blow on the shoulder with the fist administered impulsively in a sudden altercation by one who was attempting to protect himself from serious bodily injury. We accordingly conclude that the acts of appellant under the undisputed facts were not of that serious or deliberate character necessary or essential to evince a wilful intention on his part to injure Deloney."

*Johnson* v. *Safreed* was an assault case; and if a recovery can be allowed the original aggressor in an assault case, then likewise, recovery can be allowed the original instigator in a horseplay case. One cannot read the Opinion in *Johnson* v. *Safreed* without being convinced that in 1954 this Court departed from the older holdings (like *Hughes* v. *Tapley*) and took a positive step

toward the award of compensation in a case like the one at bar. The holding in *Johnson* v. *Safreed* was so understood by the Bench and Bar contemporaneously with the Opinion. In an article in 1957 in 11 Ark. Review, p. 429, after reviewing the three earlier cases heretofore mentioned, the writer of the article said of *Johnson* v. *Safred*:

"In the *Johnson* case, compensation was awarded to a worker who had struck the first blow in a fight which culminated in his injury. The court quoted extensively from modern authority, relying particularly on the opinion of Justice Rutledge in the *Hartford* case, and pointed out that jurisdictions recently began following the view that the aggression of the claimant, without more, would not bar recovery. The instant fact situation was distinguished from those in the *Birchett* and *Barrentine* cases, but whatever the relation of the *Johnson* rule to its predecessors, the conclusion of the Arkansas court in the most recent altercation situation was: 'When the accumulated pressures of work-induced or work-aggravated strains and frictions finally erupt into an affray which results in injury to one of the participants, it is artificial to say that an injury to the one who struck the first blow did not arise out of the employment, but an injury to the recipient of that blow did arise out of the employment.' . . . Similarly, the horseplay situation has been examined by the court only once, in a 1944 case, and in view of the apparent change made on controlling doctrines on altercations and assaults, a prediction of an allowance of an award under some horseplay circumstances does not seem unreasonable.

"The growing industrialization of the State of Arkansas is likely to focus increasing attention on the purposes and effects of the Workmen's Compensation statute. The modern and liberal interpretation which the Arkansas court has given to the act underlines its duel purpose: protection of the employer from harrassing and unreasonable verdicts, and guaranty for the employee and his dependents of security of recovery for industrial accidents."

The learned Circuit Judge in the case at bar rendered an Opinion which, after reviewing our earlier cases, concluded with these words:

"The important question which poses itself to this court appears to be whether or not the injury which caused the death of Childress arose out of the employment. In reading *Johnson* v. *Safreed,* 224 Ark. 397, 273 S. W. 2d 545 (1954), it is crystal clear that the Arkansas Supreme Court is no longer using as the test in Workmen's Compensation cases, 'whether the parties here were acting in the furtherance of the employer's business,' as stated in the Opinion of the Commission in the instant case. In the *Johnson* v. *Safreed* case the Arkansas Supreme Court declared that the more modern rule and the more humanitarian doctrine of 'arising out of the employment' would be the applicable yardstick . . .

"Therefore, it is the opinion of this court that *Hughes* v. *Tapley, supra,* is not now the law in this State; that in the instant case the question whether or not the decedent was the instigator is insignificant; that the conditions of employment did induce the horseplay; that the employer had knowledge of the fact that horseplay was engaged in by employees; and that the injury which caused the claiman's death arose out of the employment. Therefore, this case is held to be compensable."

We agree with the Circuit Court; conclude that the clamaints are entitled to compensation in the case at bar; and the judgment of the Circuit Court is affirmed.

HARRIS, C.J. dissents.

CARLETON HARRIS, Chief Justice (dissenting). While I have every sympathy with an injured employee, and with his family where the injury is fatal, and likewise fully agree that a liberal construction should be given the Compensation Act, nonetheless, it does not appear to me that recovery should be allowed in this type of case. I cannot bring myself to feel that it is right or proper, or that the ends of justice are best served by permitting the recovery of compensation by a worker, or his dependents, where the employee sustained his injury at a

time when he was not performing his duties, but rather, to the contrary, had deliberately stepped aside to commit an act to satisfy his own sense of humor, such act being totally unrelated to the task for which he was employed.[1]

There are numerous cases from various jurisdictions relative to injuries sustained while engaging in horseplay; some allow recovery, and some deny it, but according to C.J.S., Volume 99, Section 225, Page 753, the majority view is as follows:

"The courts are sharply divided as to whether injuries resulting from horseplay, skylarking, and practical joking are compensable. Under what is apparently the majority view, an injury to an employee as a result of sportive acts of coemployees, horseplay, or skylarking is not compensable as not arising out of the employment where the injured employee was a participant, initiator, or instigator."

The court majority in the case before us appear to take the view that *Hughes* v. *Tapley,* 206 Ark. 739, 177 S. W. 2d 429, was overruled by *Johnson* v. *Safreed,* 224 Ark. 397, 273 S. W. 2d 545. Quoting from the majority opinion:

"*Johnson* v. *Safreed* was an assault case; and if a recovery can be allowed the original aggressor in an assault case, then likewise, recovery can be allowed the original instigator in a horseplay case."

I do not agree with that analysis. As stated by Larson's Workmen's Compensation Law, Volume 1, Section 23.50, Page 354:

"While assaults and horseplay have some features in common, they also have some differences which make it doubtful whether the reasoning of assault cases can be taken over bodily and applied to horseplay. This reasoning pictures the day-to-day enforced contact of divergent personalities under the strains of industrial life, with the not improbable culmination in flareups of tem-

---

[1] The Commission found that Childress instigated the horseplay which resulted in his fatal injury, and this is not disputed.

per as the direct result of this environment. There is something relentless and inescapable about the emotional explosion that is thus ultimately thrust upon the claimant "aggressor" virtually against his will. But in a horseplay case, the most you can say is that the employment environment provides temptation and opportunity, rather than implacable emotional pressure. Hence, when a prankster sets out to play a practical joke, there is a higher probability that the action may amount to a deliberate and conscious deviation from employment than in the assault cases, in which almost every instance of violence is a spontaneous and unpremeditated reaction to the play of the surroundings on the claimant's temperatment."

Also, Justice Millwee, who wrote the opinion in *Johnson* v. *Safreed, supra,* makes it a point to particularly call attention to the fact that the injury sustained by the claimant in that case was "work-connected." In fact, this is emphasized three times in the opinion.

The majority quote a portion of the opinion of the Circuit Court in the present case, stating that they agree with the findings therein. One of these findings was that "the conditions of employment did induce the horseplay;" also, "the injury which caused the claimant's death arose out of his employment." I cannot agree with these conclusions, nor definitely determine the basis upon which they were made. It is to be supposed that these findings relate to the fact that the employer had the air hose on the premises, and that fact "induced the horseplay;" also, because Childress was injured by the perversive use of one of the pieces of equipment necessary to his work, the injury "arose out of the employment."

I, of course, agree that an innocent victim of horseplay should be granted compensation, but where the injury is the result of the inured person's willful, deliberate, and total departure from the duties for which he was employed, I cannot see that compensation is in order. To my way of thinking, Childress was as far from performing his duties at the time of inury, as if, instead

of wrestling and playing with an air hose, he had spent that time asleep or entirely away from the premises.

I, therefore, respectfully dissent.