COURTNEY HUDSON GOODSON, Justice, dissenting. Quite simply, this case involves judicial review of a question of fact. The majority’s opinion represents a significant departure from this court’s traditional review of workers’ compensation cases. The decision of the Arkansas Workers’ Compensation Commission that Prock failed to meet his burden of rebutting the statutory presumption is undoubtedly supported by substantial evidence. In concluding otherwise, a majority of this court fails to adhere to the well-established standard of review, and in doing so, it usurps the authority of the Commission to determine the true facts. Therefore, I must dissent. The majority’s opinion in this case makes it necessary to examine the origins of our law on workers’ compensation. Not long after the passage of these laws, this court recognized the purpose for their enactment. We wrote, The theory behind the Workmen’s Compensation Act is this: Every industry exposes those engaged in it to certain risks of being hurt, such risks arising out of the mere fact of being engaged in that industry. The policy behind the act is the decision of the people that it is fairer to charge as an expense of the industry (to be paid by the ultimate consumer just as he pays for the raw materials used by the industry) a part of the losses arising from the risks, to which those engaged in that industry are exposed by reason of being so engaged, than it is to let such losses fall entirely upon the employee who gets hurt. But the law does not call for general accident insurance. Its purpose is to compensate only for losses resulting from the risks to which the fact of engaging in the industry exposes the employee. 122(Emphasis supplied.) Birchett v. Tuf-Nut Garment Mfg. Co., 205 Ark. 483, 489, 169 S.W.2d 574, 577 (1948), overruled in part on other grounds by Southern Cotton Oil Division v. Childress, 237 Ark. 909, 377 S.W.2d 167 (1964). Given this purpose, from the outset our law placed no liability for compensation upon an employer for injuries solely occasioned by intoxication. Act of Mar. 15, 1939, No. 319 § 5, 1939 Ark. Act. 777, 781. In more recent times, that is prior to 1993, a prima facie presumption existed that an injury did not result from intoxication of the injured employee. Ark.Code Ann. § 11-9-707(4) (Repl.1997). Under this former statute, the employer bore the burden of rebutting that presumption by proving that the employee was intoxicated and that the employee’s injury resulted from intoxication. Id. As an expression of public policy, the General Assembly altered the law on this subject with the passage of Act 796 of 1993. Act of Mar. 31, 1993, No. 796 § 2.1993 Ark. Act. 2189, 2190. As presently codified, workers’ compensation does not cover an injury “where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician’s orders.” Ark.Code Ann. § 11-9-102(4)(B)(iv)(a) (Repl.2012). The statute also provides that the presence of a proscribed substance creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of the prohibited substance. Ark.Code Ann. § ll-9-102(4)(B)(iv)(6). Once the presumption arises, the burden is placed on the employee to prove by a preponderance of the evidence that the proscribed substance did not substantially occasion the accident or injury. Ark.Code Ann. § 11-9-102(4)(B)(d). Under the plain language of the statute, the presumption prevails unless the employee meets his burden of proving otherwise to the satisfaction of the Commission, | ^as the finder of fact. Allocating the burden on the employee to rebut the presumption by a preponderance of the evidence is consistent with our own Rule 301(a) of the Arkansas Rules of Evidence, which provides that “a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.” In the case at bar, Prock failed the drug test administered to him soon after the accident by testing positive for the presence of marijuana. As a result, it is presumed that the accident was substantially occasioned by the use of marijuana. In turn, it fell on Prock to rebut the presumption. Whether the rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. Woodall v. Hunnicutt Constr., 340 Ark. 377, 12 S.W.3d 630 (2000). Here, the Commission sifted through the conflicting evidence, made credibility determinations, and found that Prock failed to meet his burden of proof. The standards by which our appellate courts are to review findings of fact made by the Commission were established long ago and are so familiar that they can be recited by rote. In this case, the majority has strayed in its application of the standards, perhaps because their original meaning has been forgotten. In its original form, Section 25(b) of Act 319 of 1939 provides for an appeal from the Commission to the circuit court, directs that this appeal be heard on the record made before the Commission, and then orders: “Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding. The Court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: 1. That the Commission acted without or in excess of its powers. 2. That the award was procured by fraud. 3. That the facts found by the [^Commission do not support the award. 4. That there was not sufficient competent evidence in the record to warrant the making of the award.” J.L. Williams & Sons v. Smith, 205 Ark. 604, 606, 170 S.W.2d 82 (1943).[1] Based on this language of the Act, the Smith court observed “that the lawmaking powers of this state, after great deliberation, have provided the Commission as the forum for trying all questions of fact arising in connection with claims under this Act and have made its findings conclusive and binding, in the absence of fraud, if there be sufficient competent evidence to warrant the making of the finding.” Id. at 607, 170 S.W.2d at 84. In Smith, this court also construed the phrase “sufficient competent evidence” as meaning that the Commission’s findings are to be sustained on review when supported by substantial evidence, and we held that a reviewing court is prohibited from weighing the evidence anew. This court emphasized early on that the findings of the Commission shall have the same binding force and effect as the verdict of a jury, and when supported by substantial evidence, such findings will not be disturbed on appeal. Ozan Lumber Co. v. Garner, 208 Ark. 645, 187 S.W.2d 181 (1945). This court also stated that a court on review must consider the testimony in the strongest light in favor of the Commission’s findings. Hughes v. Tapley, 206 Ark. 739, 177 S.W.2d 429 (1944), overruled in part on other grounds by Childress, supra. Thisjjjcourt established the rule that the Commission’s duty on conflicting evidence is to answer factual questions and to base its decision on a fair preponderance of the evidence, and having done this, an award or rejection will not be judicially nullified if, on appeal, substantial testimony in favor of the determination is found. Stout Construction Co. v. Wells, 214 Ark. 741, 217 S.W.2d 841 (1949). This court also recognized that the Commission has the right, just as a jury would have, to believe or disbelieve the testimony of any witness, Meyer v. Seismograph Serv. Corp., 209 Ark. 168, 189 S.W.2d 794 (1945), and that in matters of credibility, the findings of the Commission have the binding force of a jury’s verdict. Ward v. Nolen, 229 Ark. 68, 313 S.W.2d 240 (1958). As summarized by Justice George Rose Smith, It is not, however, the function of the courts to weigh the evidence in eompen-sation cases. J.L. Williams & Sons, Inc., v. Smith, 205 Ark. 604, 170 S.W.2d 82. The legislature has entrusted to the Commission the power to speak the final word in controversies of fact, just as a jury must assume that responsibility in suits at common law. It is immaterial that we might reach a different conclusion if we were permitted to try the case anew. That authority has not been given to us. The evidence in support of the Commission’s action is of the character required by the statute, and we have no choice except to sustain the denial of the claim. H.C. Price Constr. Co. v. Southern, 216 Ark. 113, 115-16, 224 S.W.2d 358, 359-60 (1949). Further, this court has observed that a reviewing court does “not have the legal right, upon an appeal from a finding of fact made by the Workmen’s Compensation Commission, to set aside such finding of fact merely because in the opinion of the court that finding was contrary to the weight of the testimony.” Chicago Mill & Lumber Co. v. Fulcher, 221 Ark. 903, 910, 256 S.W.2d 723, 727 (1953). Instead, the question on appeal is not whether the testimony would bfihave supported a finding contrary to the one made, but whether it is substantial in support of the one made. Brower Mfg. Co. v. Willis, 252 Ark. 755, 480 S.W.2d 950 (1972). In addition, it is worth noting that this court has rejected the argument that the Commission is not as equipped as the referee (now administrative law judge), who conducts the hearing, to resolve inconsistencies in the testimony and to determine the credibility of witnesses. Potlatch Forests, Inc. v. Smith, 237 Ark. 468, 374 S.W.2d 166 (1964); see also Parker Stave Co. v. Hines, 209 Ark. 438, 190 S.W.2d 620 (1945). In so holding, we observed “that it is the duty of the Commission to make a finding according to a preponderance of the evidence, and not whether there is any substantial evidence to support the finding of the Referee.” Potlatch Forests, Inc., 237 Ark. at 469, 374 S.W.2d at 167 (quoting Moss v. El Dorado Drilling Co., 237 Ark. 80, 81, 371 S.W.2d 528 (1963)). Building on this principle, this court has held that the findings of the administrative law judge are given “no weight whatever.” Clark v. Peabody Testing Serv., 265 Ark. 489, 495, 579 S.W.2d 360, 362 (1979). Although these standards are by now ingrained in our case law, the majority in this case violates every single one of them. It does not review the evidence in the light most favorable to the Commission’s findings. In fact, the majority considers the evidence in the light most unfavorable to the Commission’s decision, as it relies on only the evidence presented by Prock in his effort to rebut the presumption. The majority then proceeds to weigh the evidence anew; it adopts the reasoning set forth by the administrative law judge; and it ignores the credibility determinations made by the Commission and its resolution of the conflicting testimony. In short, the majority makes no effort to determine whether reasonable minds l^could reach the decision made by the Commission, which is the test of substantial evidence governing our review. Moreover, the majority holds that the evidence supporting the Commission’s view that the accident was substantially occasioned by the use of marijuana amounts to speculation and conjecture. This conclusion is completely at odds with the statutory presumption, by which it is presumed that the accident was substantially occasioned by Prock’s use of marijuana. The record reveals the following testimony. By all accounts, the explosion occurred sometime between 9:30 and 9:40 a.m. The blast was so powerful that it launched the barrel into the air and over a nearby houseboat and engulfed both Prock and Edmisten in flames, as well as the houseboat. The Marion County Sheriffs Department investigated the explosion. Upon inspection of the barrel, the deputy detected a “very strong odor of gasoline,” and he noticed that the plugs on the barrel were intact, “suggesting that they had not been removed or checked.” He also surmised that gasoline from the airborne barrel splashed onto the houseboat, causing it to catch on fire. Coworker Mike Didway confirmed that he saw Prock and Edmisten drinking coffee in the office at 7:00 a.m. that morning. He testified that he saw the men in passing and exchanged greetings with them. Didway stated that neither of them appeared intoxicated, but he admitted that he “was not examining them like a cop would a possible drunk driver.” Further, Didway did not see either man in the ninety-minute interval before the explosion. The only person who saw Prock and Edmisten during that time frame was Steve Eastwold. Eastwold testified that he saw them at around 8:30 a.m. Specifically, he said that he had | ^observed them riding in Prock’s personal vehicle coming down a hill from the direction of the highway that led toward town. Eastwold said that there was no work that Prock or Edmisten could have been doing in that area. In describing this encounter, Eastwold said that he yelled and tried to flag them down but that Prock drove past him at first, and then backed up toward him at the shop. East-wold testified that he asked Prock and Edmisten to retrieve two barrels and to remove the tops from them. He said that he also instructed them to take out the plugs and to make sure that there was no liquid in the barrels. Eastwold testified that, from his observation of the barrel that exploded, this instruction was not heeded. Eastwold further testified that Prock and Edmisten were inside Prock’s vehicle when he spoke to them that morning. From his vantage point, he noticed nothing unusual about the men, except that neither one of them would “look at me square.” Both Prock and Edmisten tested positively for marijuana following the accident. Although Prock denied that he had used marijuana on the day of the accident, he admitted that he frequently smoked marijuana, as much as three or four times a week. Prock claimed that he had stopped smoking marijuana two weeks before the accident so that he could pass a drug test at a new job. However, Prock could not immediately recall the full name of the contact person or the business where he was supposedly going to work. The Commission did not believe Prock’s testimony. Prock also denied that he and Edmisten had been riding around in his vehicle that morning during work hours. The Commission did not find this testimony credible either, choosing instead to accept the conflicting testimony of Eastwold, as the Commission had the | fright to do. In addition, Prock claimed that he shook the barrels to determine if there was any liquid inside them, but he stated that he did not open the caps to vent the barrels or to smell what might have been inside. He acknowledged that it would have been safer to open the cap to see what was inside before putting a flame to the barrel. There was also testimony that others at the marina used an air chisel to remove lids from barrels and that Prock was the only employee who had used an acetyline torch. Eastwold had never seen Prock use a torch to complete this task, and he expressly testified that he had previously instructed Prock to use an air chisel to remove tops from barrels. He maintained that this was the safest method for opening barrels. Prock denied receiving instruction from Eastwold to use an air chisel. However, Greg Aaron, another employee, testified that Eastwold did show Prock how to use an air chisel to perform that task, and he stated that, after Eastwold left the site, Prock commented that it would be faster to use a torch. Aaron also testified that he used an air chisel to remove tops from barrels at his home, saying that an air chisel does not move quickly enough to produce sparks. Because Prock had marijuana in his system at the time of the accident, it is presumed that the accident was substantially occasioned by the use of marijuana. The question before the Commission was whether Prock sustained his burden of rebutting the presumption. In his effort to rebut the presumption, Prock submitted that he did not smoke marijuana that day; that no one noticed that he was impaired that day or on any other occasion; and that he always used an acetylene torch to open barrels. However, the Commission found that Prock |snfailed to meet his burden. When the evidence is viewed in the light most favorable to the Commission’s findings, as this court must, substantial evidence supports the Commission’s decision. Based on this record, the Commission was not persuaded by Prock’s self-serving claim that he was not impaired by the use of marijuana at the time of the accident. Prock admittedly smoked marijuana on a regular basis, and the Commission found implausible his explanation for the positive test that he last smoked marijuana two weeks before the accident. The Commission also credited the testimony of East-wold that Prock and Edmisten were riding in Prock’s personal vehicle before the accident and that they were traveling from an area that had no connection with their duties at work. Moreover, both men involved in the accident tested positive for marijuana, which the Commission need not have considered coincidental. The Commission dismissed the coworkers’ testimony that Prock did not appear to be intoxicated on that or any other day because none of the coworkers saw him within ninety minutes of the explosion. Although Eastwold did see Prock and Edmisten one hour before the explosion, he did not get close to them but noticed that their behavior was evasive. Even after the explosion, the barrel emitted the strong odor of gasoline. Regardless of whether Prock “habitually” used a torch in the past, by Prock’s own admission, he did not even open the cap to vent the barrel or to smell what was inside before applying a torch to it. Just as carelessly, it is apparent that Prock failed to perceive that there was gasoline inside the barrel when he supposedly shook it. It simply cannot be said that substantial evidence is lacking in this case. |o,In reversing the Commission’s decision, the majority recites the standards of review, but it is clear from its analysis that only lip service is given to those settled principles. Obviously, the majority does not accord the deference historically given to the Commission as the finder of fact, and out of displeasure with a perceived unfairness in the Commission’s decision, the majority is willing to sacrifice our standards of review and to substitute its judgment for that of the Commission. BAKER, J., joins. . These provisions have survived relatively unchanged since inception. See Ark. Code Ann. § 11-9-711(b)(4) (Repl.2012). However, in 1979, the General Assembly, in Acts 252, 253, and 597 of 1979, eliminated the circuit courts from the review process, provided for appeal directly from the Commission to the Court of Appeals, and codified “substantial evidence of record” as the standard of review, as had been consistently applied by this court since our decision in Smith, infra. See Scarbrough v. Cherokee Enters., 306 Ark. 641, 816 S.W.2d 876 (1991).