SLIP OPINION

Cite as 2014 Ark. 93

# SUPREME COURT OF ARKANSAS

No. CV-12-73

| | |
|---|---|
| GREG E. PROCK | **Opinion Delivered** February 27, 2014 |
| APPELLANT | |
| | APPEAL FROM THE ARKANSAS |
| V. | WORKERS' COMPENSATION |
| | COMMISSION |
| | [NO. F711607] |
| BULL SHOALS BOAT LANDING & | |
| AMERICAN HOME ASSURANCE/AIG | |
| CLAIM SERVICES, INC. | |
| APPELLEES | REVERSED AND REMANDED; |
| | COURT OF APPEALS' OPINION |
| | VACATED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Greg Prock appeals from the order of the Arkansas Workers' Compensation Commission, which reversed, by a vote of 2–1, the decision of the Administrative Law Judge ("ALJ") and denied and dismissed his claim against his employer, appellee Bull Shoals Landing.[1]  He asserts two points on appeal: (1) that the Commission erred in finding that he did not rebut the presumption that his accident was substantially occasioned by his use of illegal drugs and (2) that the Commission's disregard of credibility determinations by the ALJ and the Commission's makeup, which he claims results in bias against the worker, violate his constitutional rights.  Prock originally appealed the Commission's decision to the court of appeals, which affirmed the decision by a vote of 6–3 on the first point and 9–0 on the second.

---

[1]Bull Shoals was insured by appellee AIG Claim Services, Inc.

SLIP OPINION

*See Prock v. Bull Shoals Landing*, 2012 Ark. App. 47, 390 S.W.3d 78 (*Prock II*). Prock petitioned this court for review, which we granted. When we grant review of a decision by the court of appeals, we review the case as though the appeal had originally been filed in this court. *See Hudak-Lee v. Baxter Cnty. Reg'l Hosp.*, 2011 Ark. 31, 378 S.W.3d 77. After review, we reverse and remand to the Commission for a determination of benefits.

Prock's injuries arose following an accident at Bull Shoals Landing, where he was employed. On November 1, 2007, Prock and his coemployee, Matt Edmisten,[2] were instructed by their supervisor, Steve Eastwold, to obtain two barrels from atop a hill and to cut the tops off the barrels. Prock and Edmisten did so, and they used an acetylene torch to successfully cut the top off the first barrel. However, when they began to cut the top off the second barrel using the torch, there was an explosion; both men suffered injuries and sought workers' compensation benefits. Following the accident, drug tests on both men came back positive.

On March 25, 2009, Prock's attorney sent a letter to the ALJ, along with a motion to recuse and a brief regarding his constitutional challenges to the Commission's jurisdiction. Specifically, Prock identified the following issues, which he intended to submit during the hearing before the ALJ: (1) whether the provisions of the Workers' Compensation Act, which authorize the Commission to appoint ALJs and grant ALJs the power to hear and decide claims for compensation, being part of the Executive Branch "subject to political influences,"

---

[2]Edmisten's appeal from the Commission's decision in his case is a companion to the instant case, being decided this same date. See *Edmisten v. Bull Shoals Landing*, 2014 Ark. 89, ___ S.W.3d ___.



violate the substantive and procedural requirements of due process; (2) whether the provisions

of the Workers' Compensation Act, which authorize the Governor's appointment of members

to the Commission and give the Governor sole authority over the Commission's appointment

of ALJs, violate separation of powers by making judicial functions a part of and subject to the

Executive Branch; (3) whether the provisions of the Workers' Compensation Act, which

place the judicial function of adjudicating claims for workers under the Executive Branch,

violate article 5, section 32 of the Arkansas Constitution in that the constitutional provision

does not expressly permit the legislature to delegate judicial functions to the Executive

Branch;[3] (4) whether the provisions of the Workers' Compensation Act, which place the

judicial function of adjudicating workers' claims under the Executive Branch, violate article

2, section 3 of the Arkansas Constitution;[4] (5) whether the provisions of the Workers'

Compensation Act, which place the judicial function of adjudicating workers' claims under

---

[3]Article 5, section 32 provides:
The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted.

[4]Article 2, section 3 provides:
The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition.

the Executive Branch, violate article 2, section 2 of the Arkansas Constitution;[5] (6) whether provisions of the Workers' Compensation Act, which place the judicial function of adjudicating workers' claims under the Executive Branch, violate article 2, section 18 of the Arkansas Constitution;[6] and (7) whether provisions of the Workers' Compensation Act, which place the judicial function of adjudicating workers' claims under the Executive Branch, violate article 2, section 29 of the Arkansas Constitution.[7]  In his motion to recuse, Prock moved for the recusal of the ALJ assigned to his case and the recusal of all present ALJs and Commissioners on the basis that (1) they might "have a personal interest in the outcome of the proceedings by virtue of the threat against his or her job security"; and (2) since they perform their duties "under constant pressures that infringe and have a chilling effect upon their decisional independence," their bias might reasonably be questioned.  He further

---

[5]Article 2, section 2 provides:
> All men are created equally free and independent, and have certain inherent and inalienable rights; amongst which are those of enjoying and defending life and liberty; of acquiring, possessing and protecting property, and reputation; and of pursuing their own happiness. To secure these rights governments are instituted among men, deriving their just powers from the consent of the governed.

[6]Article 2, section 18 provides:
> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

[7]Article 2, section 29 provides:
> This enumeration of rights shall not be construed to deny or disparage others retained by the people; and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare that everything in this article is excepted out of the general powers of the government; and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein contained, shall be void.

requested that a special ALJ, with no direct interest in the outcome of the constitutional issues presented and free from even the appearance that his or her decisions are influenced by the Executive Branch or other private interests, be appointed and assigned to hear his claim.

A hearing was held in Prock's case on April 15, 2009. On May 15, 2009, the ALJ issued its order that denied Prock's motion to recuse, found his constitutional challenges to be without merit, and found that the Workers' Compensation Act was constitutional. It then found that illegal drugs, namely "cannabinoids," were present in Prock's body at the time of his accident. The ALJ noted that, pursuant to Arkansas Code Annotated § 11-9-102(4)(B)(iv)*(b)*, the presence of these drugs created a rebuttable presumption that Prock's accident was substantially occasioned by the use of those drugs. Accordingly, the ALJ observed, the burden shifted to Prock to prove by a preponderance of the evidence that illegal drugs did not substantially occasion his accident or injury, in order to be entitled to compensation benefits.

The ALJ then concluded that, "[o]n the basis of the record as a whole," Prock had met his burden of proving by a preponderance of the evidence that his accidental work incident was not substantially occasioned by the use of drugs. The ALJ delineated the testimony and concluded as follows:

> Considering that none of the witnesses observed the claimant using marijuana or otherwise under the influence of marijuana at any time on the day of the explosion, and that the claimant credibly denied having used marijuana on the day of the incident, I am persuaded that any assertion or finding that the claimant's accidental injury was the result of any "impairment" on the part of the claimant would be based on speculation and conjecture, which can never supply the place of proof.
> In other words, the preponderance of the credible evidence demonstrates that the claimant's injury was the result of the claimant's attempt to accomplish his assigned

5



job task in a quick and convenient manner and not the result of "impaired judgment," caused by the use of marijuana. Accordingly, I find that the claimant has rebutted the presumption that his injury was substantially occasioned by the use of illegal drugs. As a result, I find that the claimant suffered compensable injuries, in the form of severe burns to his body (legs, hands, face and arms) when the barrel he was attempting to cut the lid from with a cutting torch exploded, while working for the respondent-employer on November 1, 2007.

Accordingly, the ALJ found that Prock was entitled to benefits.

Bull Shoals Landing and its carrier, AIG Claim Services, Inc., filed a notice of appeal from the ALJ's opinion, appealing the decision to the full Commission, and the Commission issued its opinion, with a vote of 2-1 on October 14, 2009. In its opinion, the Commission found that, based on its de novo review of the record, Prock had failed to rebut the statutory presumption that his injuries were substantially occasioned by the use of illegal drugs, and it reversed the decision of the ALJ. The Commission opined that the question for it was "whether the claimant's denial of having used marijuana on that date of the accident is sufficient to constitute a preponderance of the credible evidence and rebut the presumption that the accident was substantially occasioned by the use of marijuana." It then concluded that Prock's testimony was "not sufficient enough to rebut the statutory presumption," as his testimony was "filled with inconsistencies and unexplained evidence" that clearly indicated that he failed to rebut the presumption.

Specifically, the Commission cited to and placed "greater weight" on the testimony of Prock's supervisor, Steve Eastwold. It further found that Prock's claim that he had quit smoking marijuana due to another job offer was completely unsupported by the evidence, which served as further "evidence of the claimant not being a credible witness." And finally,

the Commission pointed out, the evidence demonstrated that Prock had been directed to use an air chisel to open barrels, but he denied this, in addition to the fact that the barrels had warning labels to not use a torch[8] to open them and that Prock failed to open the cap on the top of the barrel.

Here, the Commission rejected outright Prock's credibility and found as follows:

> [W]hen we consider all of the evidence in the record, we do not find the claimant to be a credible witness. The claimant lied about being shown how to use the air chisel. He lied about where he was when Mr. Eastwold told him what to do with the barrels. The claimant's lack of personal safety is evident by his failure to even read the warning labels. Finally, we give no credit to his testimony he quit smoking pot as his reasoning for quitting smoking pot two weeks prior cannot be verified in any way, shape or form. We are not persuaded by claimant's testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of claimant's long-term marijuana use and his lack of personal safety. The claimant had marijuana or its metabolic derivative in his body at the time of the accident. Therefore, under the law, it is presumed that this illegal drug use substantially occasioned his injury. The only evidence that it did not was claimant's unsubstantiated testimony that he always used a torch to open barrels and that he had not smoked marijuana for over a week. For those reasons set forth above, we do not find the claimant's testimony to be credible. Therefore, we find that the claimant has failed to successfully rebut the statutory presumption. Accordingly, we hereby reverse the decision of the Administrative Law Judge.

The Commission further found no merit in Prock's constitutional challenges:

> On appeal, the claimant raises a new issue arguing that if the Commission reverses the Administrative Law Judge, the claimant's due process rights are violated because the Administrative Law Judge's finding is based on credibility. Essentially, the claimant is arguing that the Commission violates the claimant's right to due process if it reverses a finding of credibility made by any Administrative Law Judge. We find the argument has no merit as this issue has previously been addressed by the Court of Appeals.

---

[8]The label actually warned not to cut at all; therefore, presumably, using an air chisel would also have been in contravention of the warning label.

SLIP OPINION

The Commission then denied and dismissed Prock's claim.[9]  Prock then filed his notice of appeal with the Commission.

The Arkansas Court of Appeals reversed and remanded the matter to the Commission. *See Prock v. Bull Shoals Landing*, 2010 Ark. App. 724 (*Prock I*).  In its opinion, the court noted the Commission's finding that the only evidence to rebut the presumption was Prock's and Edmisten's denials of smoking marijuana and observed that the record showed that other evidence was in fact offered.  It then concluded that "[b]ecause the Commission stated that no such evidence existed, we are unable to say whether the testimony of these witnesses was disbelieved, overlooked, or disregarded arbitrarily."  2010 Ark. App. 724, at 2.  Because it is reversible error for the Commission to state that there is no evidence on an issue when such evidence in fact appears in the record, the court reversed and remanded the matter to the Commission for findings of fact sufficiently detailed and specific to permit meaningful judicial

---

[9]The sole dissenter took issue with the majority's statement that the only evidence to rebut the statutory presumption was Prock and Edmisten's denial of smoking marijuana. The dissenting commissioner observed that in addition to Prock's testimony, "Mr. Didway, Mr. Edmisten, and Mr. Eastwold all testified that they saw the claimant on the morning of the accident and observed that he was not impaired in any form or fashion." The dissenter then found that Prock had successfully rebutted the presumption that the accident was caused by the use of marijuana. He continued, concluding:

> Considering that none of the witnesses observed the claimant using marijuana or otherwise under the influence of marijuana at any time on the day of the explosion, and that the claimant credibly denied having used marijuana on the day of the incident, I am persuaded that any assertion or finding that the claimant's accidental injury was the result of any "impairment" on the part of the claimant would be based on speculation and conjecture, which can never supply the place of proof.
>
> In other words, the preponderance of the credible evidence demonstrates that the claimant's injury was the result of the claimant's attempt to accomplish his assigned job task in a quick and convenient manner and not the result of "impaired judgment," caused by the use of marijuana.



review. *See id.*

In accord with the court of appeals' mandate, the Commission issued a second opinion,

with a 2–1 vote on December 14, 2010. In it, the Commission found, in pertinent part:

> In the present claim, the evidence shows that THC was present in the claimant at the time of the injury. The claimant denied using marijuana on the date of the accident. The claimant's testimony is not sufficient enough to rebut the statutory presumption. The evidence demonstrates that the claimant's testimony is filled with inconsistencies and unexplained evidence which clearly indicates that the claimant failed to rebut the presumption. The claimant testified that he arrived at work sometime between 7:00 and 8:00 a.m. He clocked in and stopped at the marina to have a cup of coffee. The claimant testified that he met Mr. Eastwold, the owner, as he walked out of the marina. The claimant had not begun any work–related activities when he saw Mr. Eastwold. The claimant testified that this was when Mr. Eastwold directed the claimant to take the tops off two barrels so he could burn Styrofoam. However, Mr. Eastwold testified that he first saw the claimant that day when he observed the claimant and Mr. Edmisten in the claimant's personal vehicle coming from over a hill. It was at that time, while the claimant was in his Jeep, that Mr. Eastwold told the claimant to go get a couple of barrels and cut the tops off for him. Mr. Eastwold made perfectly clear during his testimony that there was no reason for the claimant to be in his own vehicle on the stretch of road that he and Mr. Edmisten had been driving on. The claimant offered no explanation, but only denied being in the vehicle with Mr. Edmisten. The claimant testified that he and Mr. Edmisten were down at the marina when he encountered Mr. Eastwold. This testimony is not corroborated by either Mr. Eastwold or Mr. Didway. We place greater weight upon the testimony of Mr. Eastwold.
>
> . . . .
>
> Therefore, when we consider all of the evidence in the record, we do not find the claimant to be a credible witness. The claimant lied about being shown how to use the air chisel. He lied about where he was when Mr. Eastwold told him what to do with the barrels. The claimant's lack of personal safety is evident by his failure to even read the warning labels. Finally, we give no credit to his testimony he quit smoking pot as his reasoning for quitting smoking pot two weeks prior cannot be verified in any way, shape or form. We are not persuaded by claimant's testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of claimant's admitted long–term marijuana use and his lack of personal safety. The claimant had marijuana or its metabolic derivative in his body at the time of the accident. Therefore, under the law, it is presumed that this illegal drug use substantially occasioned his injury. The evidence that it did not was the claimant's testimony that he always used

a torch to open barrels and that he had not smoked marijuana for over a week. His testimony is supported by Mr. Edmisten that he and the claimant did not smoke pot on the day of the incident. However, Mr. Edmisten's testimony is suspect at best since he also has a pending workers' compensation claim and had a vested interest in the outcome of this litigation. Further, the testimony of Mr. Didway that the claimant did not appear impaired before the incident is not persuasive enough to overcome the presumption as there were approximately 90 unaccounted for minutes between when the claimant was seen by Mr. Didway and the incident, during which time the claimant was seen in his personal vehicle with Mr. Edmisten, an activity which he denies. When we weigh all the evidence, we do not find the claimant's testimony to be credible.

We further find that even if the claimant did not appear to be impaired while drinking coffee first thing in the morning, it is irrelevant. Mr. Edmisten and the claimant admitted that they did no work prior to going to retrieve the barrels. According to Mr. Eastwold and Mr. Didway, the explosion occurred at around 9:30 a.m. The gap in time from when the coffee-drinking ended and the explosion occurred is curious. The entire barrel-retrieving and cutting process, could not have taken 90 minutes. Mr. Eastwold testified that he encountered the claimant and Mr. Edmisten in the claimant's vehicle, coming from the main road off the premises, at which point he asked them to cut the barrels. He testified that neither the claimant nor Mr. Edmisten would look him in the eye. He was not close enough to assess whether they appeared to be under the influence of marijuana. The gap in time between when the claimant was last seen by Mr. Didway and when he was asked to get the barrels by Mr. Eastwold together with the claimant and Mr. Edmisten's suspicious behavior of not looking Mr. Eastwold square in the face is sufficient enough to disregard Mr. Didway's testimony regarding the claimant's appearance early in the morning.

Mr. Didway confirmed that the claimant had cut barrels open with a cutting torch previously. However, he stated that he would not have used this method. Moreover, he did not see Mr. Eastwold on the dock at the point in time in which, according to Mr. Edmisten and the claimant, Mr. Eastwold was supposed to be asking them to cut barrels.

With regard to Mr. Williams's testimony, we do not find it persuasive enough to overcome the presumption. Mr. Williams testified that he never witnessed the claimant intoxicated at work. However, he admitted that he was not around Mr. Edmisten or the claimant at the time of the explosion. Accordingly, he could not have known whether the claimant was under the influence of drugs or alcohol when the incident occurred.

Mr. Aaron corroborated Mr. Eastwold's testimony that he had shown the claimant and Mr. Edmisten how to use an air chisel to remove the top from a barrel. He was of the opinion that it is important to remove the bunghole cap from the barrel prior to cutting into it in order to release any buildup of gases inside. We find Mr. Eastwold to be more credible than Mr. Edmisten and the claimant concerning what

transpired the morning of the explosion.

Therefore, based upon our de novo review of the record, we find that there is a direct causal link between the claimant's marijuana use and the explosion. We find that the claimant has failed to rebut the presumption that the accident was substantially occasioned by his use of marijuana. That being the case, he has not proven by a preponderance of the evidence that he sustained a compensable injury. The claimant has failed to rebut the statutory presumption that the accident was substantially occasioned by his use of marijuana. Accordingly, we hereby reverse the decision of the Administrative Law Judge.

With respect to Prock's allegation that his due-process rights would be violated if the Commission reversed the ALJ, the Commission reaffirmed the finding from its October 14, 2009 opinion that Prock's argument had no merit in light of the court of appeals' previous holdings.

The dissenting commissioner observed that the "only evidence of intoxication in this claim is the positive drug test." With respect to the testimony, the dissenting commissioner discounted the testimony of both Prock and Edmisten, but found that

> [t]heir boss, Mr. Steve Eastwold, also an interested party, while insinuating that Mr. Prock and Mr. Edmisten were off smoking pot in Mr. Prock's Cherokee, admitted that if he had thought they were intoxicated when he instructed them to cut the barrels he would not have let them work.
>
> [His] insinuation . . ., specifically relied on by the majority, is sheer conjecture and speculation, which, even if plausible, cannot take the place of proof. In totality, the testimony of Mr. Didway, and that of Mr. Eastwold that he would not have let Mr. Prock and Mr. Edmisten work if he thought they were high, leads to a finding that the claimant was not intoxicated.

The dissenter opined that "[t]he accident was substantially occasioned by Mr. Prock's habit of cutting open oil barrels with an acetylene torch." He then concluded that because the accident was not substantially occasioned by the use of marijuana, "the bar presented by Ark. Code Ann. § 11-9-102(4)(B)(iv) does not apply to this claim."



Prock filed his notice of appeal, and, as already noted, appealed to our court of appeals, which affirmed the Commission's decision. *See Prock II, supra.* We granted review and now turn to the merits of Prock's arguments on appeal.

For his first point on appeal, Prock contends that the Commission erred in finding that he had failed to rebut the statutory presumption that his accident was substantially occasioned by his use of marijuana. He contends that there was no evidence presented by any person, including his employer, that he appeared intoxicated at the time of the accident; therefore, he claims, he clearly rebutted the presumption that the accident was substantially occasioned by his use of marijuana. Prock argues that any finding that the accident was substantially occasioned by marijuana would be based on pure speculation and conjecture. He additionally points out that evidence was presented that he had taken the same actions in the past without incident. Appellees aver that "basically" a bare denial is the only evidence to support Prock's claim that he was not impaired on the day of the accident and that his testimony was filled with inconsistencies.

In appeals involving claims for workers' compensation, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *See Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, 388 S.W.3d 16. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *See id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *See id.* Additionally, questions concerning the credibility of

witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *See Pack v. Little Rock Convention Ctr. & Visitors Bureau*, 2013 Ark. 186, ___ S.W.3d ___. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *See id.* Finally, the court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *See Hudak-Lee v. Baxter Cnty. Reg'l Hosp.*, 2011 Ark. 31, 378 S.W.3d 77.

Under Arkansas law, a workplace injury that is substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's order is not compensable. *See* Ark. Code Ann. § 11-9-102(4)(B)(iv)*(a)* (Repl. 2012); *see also ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 71, 977 S.W.2d 212, 216 (1998) (explaining that "substantially occasioned" means that there must be a direct causal link between the use of alcohol [or illegal drugs] and the injury or accident).[10] Once evidence is admitted showing that such drugs were in the claimant's system at the time of the accident, the burden of proof shifts to the claimant, requiring him to prove by a preponderance of the evidence that the accident was not substantially occasioned by intoxication from one of these substances. *See*

---

[10]Justice Baker's dissent contends that the majority misconstrues this court's holding in *ERC*. There is absolutely no misconstruing that this court interpreted the use of "substantially occasioned" in the relevant statute to require a direct causal link between the use of alcohol (or drugs) and the injury in order for the injury to be noncompensable. The presumption itself mimics that very language. The Commission's decision was that Prock did not successfully rebut that presumption. This court's review obviously must discuss the presumption itself in some respect.

13

Ark. Code Ann. § 11-9-102(4)(B)(iv)(b), (d).

It is undisputed that illegal drugs, namely "cannabinoids," were present in Prock's body at the time of the accident and that the burden shifted to Prock to prove that the accident "was not substantially occasioned by the use of alcohol [or drugs]." The Commission's opinion went into great detail illustrating why it found that Prock had been untruthful about his drug use. However, the issue before the Commission was whether Prock proved, by a preponderance of the evidence, that his accident or injury was not substantially occasioned by his drug use.[11]

The evidence presented by Prock to rebut the presumption and to prove that there was not a causal link between drug use and the accident was as follows. Prock testified on his own behalf, claiming that he was not intoxicated in any manner on the day of the accident, but more importantly, that it was not the first time he had used a cutting torch to open barrels, that he had not read the warning labels, and that he did not know, nor had he been shown, another method for opening barrels. Mike Didway, a fellow employee of Prock's, testified that he saw Prock suffer the injury and that Prock did not appear drunk or intoxicated. Didway stated that he had never seen Prock appear intoxicated at work in over seven years,

---

[11]Justice Baker's dissent additionally expresses concern that the majority is unaware of our proper role in reviewing the Commission. Fear not. The majority understands that the decision for the Commission was whether or not Prock proved by a preponderance of the evidence that his drug use did not substantially occasion the injury or accident. Again, because we are reviewing the Commission, it should come as no shock that the standard which should have guided the Commission would appear in our discussion. We are not unaware that a certain deference is given to the Commission and that our standard is different on appeal. However, we will simply not affirm the Commission where we are convinced that it was unreasonable in its conclusion and are not required to do so under the law.

SLIP OPINION

or smell of either alcohol or drugs. More importantly, Didway testified, "In the past I have seen [Prock] use a cutting torch to open the barrels and this is something I believe anyone could have observed." Roger Williams, another fellow employee of Prock's, testified that he did not see Prock prior to the explosion, but had never seen Prock come to work intoxicated or drunk in the ten years they had worked together. Matt Edmisten, the fellow employee who was injured with Prock during the accident, testified that Prock was not intoxicated in any manner. Edmisten additionally stated that he had seen Prock open barrels many times using a cutting torch and that he had helped and watched Prock open barrels that way "on many prior occasions, probably 15 to 20 times over the last 3 1/2 to 4 years." Edmisten claimed that he believed it was reasonable for Prock to open barrels with a cutting torch as he had seen other employees do so. In fact, in describing the accident, Edmisten explained that Prock had already successfully cut the top off the first barrel with a torch before the accident happened while cutting into a second barrel. Although fellow employee Greg Aaron testified on behalf of Bull Shoals and contradicted Prock's testimony that he had never been shown another method for opening barrels, Aaron did testify that he heard Prock comment that a torch would be a faster way of opening barrels than an air chisel. Finally, Steve Eastwold, Prock's boss and a witness for Bull Shoals, testified that had Prock appeared to be intoxicated, he would not have allowed him to continue working.

The above evidence can be summarized by concluding that no one saw Prock intoxicated on the day of the accident, no one saw him ingest anything, no one had seen him impaired in any way at work on prior occasions, and, most importantly, that he performed

a task that he had been asked to do in the same manner in which he had habitually performed it in the past. After a review of the Commission's decision, we conclude that the Commission arbitrarily disregarded any testimony that supported Prock's claim in addition to twisting, or leaving out of its opinion altogether, certain testimony that supported Prock. *See also Edmisten v. Bull Shoals Landing*, 2014 Ark. 89, ___ S.W.3d ___. While it is true that appellate courts defer to the Commission on issues involving the weight of evidence and the credibility of witnesses and that it may be insulated to a certain degree, it is not so insulated as to render appellate review meaningless. *See Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001). The Commission may not arbitrarily disregard the testimony of any witness and, likewise, the Commission may not arbitrarily disregard other evidence submitted in support of a claim. *Id.*

The "evidence" to support the Commission's finding that the accident was substantially occasioned by intoxication is the mere speculation and conjecture that Prock was actually high on the day of the accident and that Prock had at some point been shown an alternative method for opening barrels.[12] We cannot say that is substantial evidence, and we do not conclude that reasonable minds could reach the result found by the Commission. We are convinced that fair-minded persons with the same set of facts could not have found that

---

[12]Justice Goodson's dissenting opinion makes the same mistake the Commission did and focuses on the evidence to support Prock's intoxication and the finding that Prock was not credible. That focus is misplaced given the presumption. We may not lose sight of the fact that the presumption here is rebuttable. There is simply not substantial evidence for reasonable minds to find a direct causal link between any drug use and the way the injury happened. If we were to hold as the dissent insists we should, what then is the purpose of our review?

Prock failed to rebut the presumption by a preponderance of the evidence; rather, we conclude that fair-minded persons would find that the accident and the injuries were the direct result of Prock's practice of opening barrels in an unsafe manner with an acetylene torch. For this reason, we reverse the Commission and remand for a determination of benefits.

Prock additionally argues on appeal that the entire workers' compensation system is unconstitutional and that his due-process rights were violated in the instant case when the Commission overturned the ALJ's decisions regarding credibility. However, because we reverse and remand on his first argument, we will not reach the second. It is our duty to refrain from addressing constitutional issues if or when the case can be disposed of without determining constitutional questions. *See Herman Wilson Lumber Co. v. Hughes*, 245 Ark. 168, 431 S.W.2d 487 (1968); *see also Solis v. State*, 371 Ark. 590, 269 S.W.3d 352 (2007) (holding that, if the case can be resolved without reaching constitutional arguments, it is our duty to do so); *Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996) (holding that constitutional issues are not decided unless it is necessary to the decision).

Reversed and remanded; court of appeals' opinion vacated.

Special Justices JUDSON KIDD and TJUANA BYRD join in this opinion.

BAKER and GOODSON, JJ., dissent.

HART and HOOFMAN, JJ., not participating.

**KAREN R. BAKER, Justice, dissenting.** I agree with Justice Goodson's dissent, and I join it. I write separately for two reasons.

SLIP OPINION

First, I write to emphasize that the majority failed to review the Commission's decision with our proper standard of review—in the light most favorable to the Commission. Second, I write to emphasize that the majority has misconstrued our holding in *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998), and in doing so, completely abrogated the statutory presumption set out in Ark. Code Ann. § 11-9-102(4)(B)(iv)*(d)*.

First, with regard to reviewing the Commission's decision, the majority erroneously reviews the evidence in the light most favorable to Prock. The majority goes to great lengths to discuss Prock's testimony and five other witnesses who support Prock's position. The majority summarizes the evidence by stating,

> The above evidence can be summarized by concluding that no one saw Prock intoxicated on the day of the accident, no one saw him ingest anything, no one had seen him impaired in any way at work on prior occasions, and most importantly, that he performed a task that he had been asked to in the same manner in which he had habitually performed in it in the past. After a review of the Commission's decision, we conclude that the Commission arbitrarily disregarded any testimony that supported Prock's claim in addition to twisting, or leaving out of its opinion altogether, certain testimony that supported Prock.

However, these statements illustrate the flaw in the majority's analysis and demonstrate a fundamental misunderstanding of this court's proper role when reviewing the Commission's decision in a workers' compensation case. We must review the evidence in the light most favorable to the Commission, not the evidence that supports the claimant. *Estridge v. Waste Mgmt.*, 343 Ark. 276, 278, 33 S.W.3d 167, 169 (2000) (internal citations omitted) ("We view the evidence in a light most favorable to the Commission's decision, and we uphold that

decision if it is supported by substantial evidence."); *see also Hapney v. Rheem Mfg. Co.*, 342 Ark. 11, 17–18, 26 S.W.3d 777, 781 (2000) (internal citations omitted) ("Our standard of review requires us to consider whether a reasonable person could come to the same conclusion, and we will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same set of facts before them could not have reached the conclusions arrived at by the Commission. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision.").

Accordingly, our standard of review in Prock's case is, when the evidence is viewed in the light most favorable to the Commission's decision, whether reasonable minds could reach the Commission's conclusion; if so, we must affirm its decision.

Second, the majority misconstrues this court's holding in *ERC* that there must be a direct causal link between the illegal drug use and the accident in order for the accident to be noncompensable. The majority states "[U]nder Arkansas law, a workplace injury that is substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's order is not compensable. *See* Ark. Code Ann. § 11-9-102(4)(B)(iv)*(a)* (Repl. 2012); *see also ERC Contractor Yard & Sales*, 335 Ark. 63, 977 S.W.2d 212 (explaining that 'substantially occasioned' means that there must be a direct causal link between the use of illegal drugs and the injury or accident)." This statement misconstrues the holding of *ERC*. In *ERC*, the Commission found that the claimant's injury was compensable because he had overcome the statutory presumption. Despite the claimant's having had a very

19

small amount of alcohol in his system, it was undisputed that his injury resulted from alcohol–withdrawal syndrome rather than alcohol use. We affirmed the Commission's decision that the claimant had successfully rebutted the presumption.

The language in *ERC* cited by the majority is found in the discussion of ERC's second argument regarding causation, which did not even relate to the holding affirming the Commission's finding that the statutory presumption had been overcome by the claimant. Instead, the discussion was directed at ERC's argument that, even if the statutory presumption had been overcome, in the claimant's unique circumstances, a direct causal link still existed between his alcohol use and his injury:

> According to ERC, the causal connection is established by the following sequence of events: but for [the claimant's] long-term use of alcohol, he would not have suffered an alcohol withdrawal seizure, and but for the seizure he would not have suffered a fall. In order to address this argument, we must construe the phrase "substantially occasioned by the use of alcohol" in Ark. Code Ann. § 11-9-102(5)(B)(iv). As previously stated, we look first at the plain language of the statute and, giving the words their plain and ordinary meaning, construe the statute just as it reads. *Leathers v. Cotton*, 332 Ark. 49, 961 S.W.2d 32 (1998); *Vanderpool* [ *v. Fidelity & Casualty Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997)].

> . . . We . . . conclude that the plain and ordinary meaning of the phrase "substantially occasioned by the use of alcohol" requires that there be a direct causal link between the use of alcohol and the injury in order for the injury to be noncompensable. To conclude otherwise would involve the addition of words that do not appear in the text of Ark. Code Ann. § 11-9-102(5)(B)(iv).

*ERC*, 335 Ark. at 70–71, 977 S.W.2d at 215–16.

Accordingly, this portion of our discussion in *ERC* addresses an argument made in that case, but does *not* change our long-standing interpretation of the rebuttable statutory presumption. It does not even concern the statutory presumption, and it is not applicable

here. The presence of an illegal drug in Prock's system triggered the presumption that his injury was substantially occasioned by Prock's use of the illegal drugs. No other causal link is needed.

GOODSON, J., joins.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** Quite simply, this case involves judicial review of a question of fact. The majority's opinion represents a significant departure from this court's traditional review of workers' compensation cases. The decision of the Arkansas Workers' Compensation Commission that Prock failed to meet his burden of rebutting the statutory presumption is undoubtedly supported by substantial evidence. In concluding otherwise, a majority of this court fails to adhere to the well-established standard of review, and in doing so, it usurps the authority of the Commission to determine the true facts. Therefore, I must dissent.

The majority's opinion in this case makes it necessary to examine the origins of our law on workers' compensation. Not long after the passage of these laws, this court recognized the purpose for their enactment. We wrote,

> The theory behind the Workmen's Compensation Act is this: Every industry exposes those engaged in it to certain risks of being hurt, such risks arising out of the mere fact of being engaged in that industry. The policy behind the act is the decision of the people that it is fairer to charge as an expense of the industry (to be paid by the ultimate consumer just as he pays for the raw materials used by the industry) a part of the losses arising from the risks, to which those engaged in that industry are exposed by reason of being so engaged, than it is to let such losses fall entirely upon the employee who gets hurt. *But the law does not call for general accident insurance. Its purpose is to compensate only for losses resulting from the risks to which the fact of engaging in the industry exposes the employee.*



(Emphasis supplied.) *Birchett v. Tuf-Nut Garment Mfg. Co.*, 205 Ark. 483, 489, 169 S.W.2d 574, 577 (1943), *overruled in part on other grounds by Southern Cotton Oil Division v. Childress*, 237 Ark. 909, 377 S.W.2d 167 (1964). Given this purpose, from the outset our law placed no liability for compensation upon an employer for injuries solely occasioned by intoxication. Act of Mar. 15, 1939, No. 319 § 5, 1939 Ark. Act. 777, 781. In more recent times, that is prior to 1993, a prima facie presumption existed that an injury did not result from intoxication of the injured employee. Ark. Code Ann. § 11-9-707(4) (Repl. 1997). Under this former statute, the employer bore the burden of rebutting that presumption by proving that the employee was intoxicated and that the employee's injury resulted from intoxication. *Id.* As an expression of public policy, the General Assembly altered the law on this subject with the passage of Act 796 of 1993. Act of Mar. 31, 1993, No. 796 § 2. 1993 Ark. Act. 2189, 2190. As presently codified, workers' compensation does not cover an injury "where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders." Ark. Code Ann. § 11-9-102(4)(B)(iv)(*a*) (Repl. 2012). The statute also provides that the presence of a proscribed substance creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of the prohibited substance. Ark. Code Ann. § 11-9-102(4)(B)(iv)(*b*). Once the presumption arises, the burden is placed on the employee to prove by a preponderance of the evidence that the proscribed substance did not substantially occasion the accident or injury. Ark. Code Ann. § 11-9-102(4)(B)(*d*). Under the plain language of the statute, the presumption prevails unless the employee meets his burden of proving otherwise to the satisfaction of the Commission,

22

as the finder of fact. Allocating the burden on the employee to rebut the presumption by a preponderance of the evidence is consistent with our own Rule 301(a) of the Arkansas Rules of Evidence, which provides that "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

In the case at bar, Prock failed the drug test administered to him soon after the accident by testing positive for the presence of marijuana. As a result, it is presumed that the accident was substantially occasioned by the use of marijuana. In turn, it fell on Prock to rebut the presumption. Whether the rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. *Woodall v. Hunnicutt Constr.*, 340 Ark. 377, 12 S.W.3d 630 (2000). Here, the Commission sifted through the conflicting evidence, made credibility determinations, and found that Prock failed to meet his burden of proof.

The standards by which our appellate courts are to review findings of fact made by the Commission were established long ago and are so familiar that they can be recited by rote. In this case, the majority has strayed in its application of the standards, perhaps because their original meaning has been forgotten. In its original form,

> Section 25(b) of Act 319 of 1939 provides for an appeal from the Commission to the circuit court, directs that this appeal be heard on the record made before the Commission, and then orders: "Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding. The Court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: 1. That the Commission acted without or in excess of its powers. 2. That the award was procured by fraud. 3. That the facts found by the

23

Commission do not support the award. 4. That there was not sufficient competent evidence in the record to warrant the making of the award."

*J. L. Williams & Sons v. Smith*, 205 Ark. 604, 606, 170 S.W.2d 82 (1943).[1] Based on this language of the Act, the *Smith* court observed "that the lawmaking powers of this state, after great deliberation, have provided the Commission as the forum for trying all questions of fact arising in connection with claims under this Act and have made its findings conclusive and binding, in the absence of fraud, if there be sufficient competent evidence to warrant the making of the finding." *Id.* at 607, 170 S.W.2d at 84. In *Smith*, this court also construed the phrase "sufficient competent evidence" as meaning that the Commission's findings are to be sustained on review when supported by substantial evidence, and we held that a reviewing court is prohibited from weighing the evidence anew.

This court emphasized early on that the findings of the Commission shall have the same binding force and effect as the verdict of a jury, and when supported by substantial evidence, such findings will not be disturbed on appeal. *Ozan Lumber Co. v. Garner*, 208 Ark. 645, 187 S.W.2d 181 (1945). This court also stated that a court on review must consider the testimony in the strongest light in favor of the Commission's findings. *Hughes v. Tapley*, 206 Ark. 739, 177 S.W.2d 429 (1944), *overruled in part on other grounds by Childress, supra.* This

---

[1]These provisions have survived relatively unchanged since inception. *See* Ark. Code Ann. § 11-9-711(b)(4) (Repl. 2012). However, in 1979, the General Assembly, in Acts 252, 253, and 597 of 1979, eliminated the circuit courts from the review process, provided for appeal directly from the Commission to the Court of Appeals, and codified "substantial evidence of record" as the standard of review, as had been consistently applied by this court since our decision in *Smith, infra. See Scarbrough v. Cherokee Enters.*, 306 Ark. 641, 816 S.W.2d 876 (1991).

SLIP OPINION

court established the rule that the Commission's duty on conflicting evidence is to answer factual questions and to base its decision on a fair preponderance of the evidence, and having done this, an award or rejection will not be judicially nullified if, on appeal, substantial testimony in favor of the determination is found. *Stout Lumber Co. v. Wells*, 214 Ark. 741, 217 S.W.2d 841 (1949). This court also recognized that the Commission has the right, just as a jury would have, to believe or disbelieve the testimony of any witness, *Meyer v. Seismograph Serv. Corp.*, 209 Ark. 168, 189 S.W.2d 794 (1945), and that in matters of credibility, the findings of the Commission have the binding force of a jury's verdict. *Ward v. Nolen*, 229 Ark. 68, 313 S.W.2d 240 (1958). As summarized by Justice George Rose Smith,

> It is not, however, the function of the courts to weigh the evidence in compensation cases. *J. L. Williams & Sons, Inc., v. Smith*, 205 Ark. 604, 170 S.W.2d 82. The legislature has entrusted to the Commission the power to speak the final word in controversies of fact, just as a jury must assume that responsibility in suits at common law. It is immaterial that we might reach a different conclusion if we were permitted to try the case anew. That authority has not been given to us. The evidence in support of the Commission's action is of the character required by the statute, and we have no choice except to sustain the denial of the claim.

*H.C. Price Constr. Co. v. Southern*, 216 Ark. 113, 115–16, 224 S.W.2d 358, 359–60 (1949). Further, this court has observed that a reviewing court does "not have the legal right, upon an appeal from a finding of fact made by the Workmen's Compensation Commission, to set aside such finding of fact merely because in the opinion of the court that finding was contrary to the weight of the testimony." *Chicago Mill & Lumber Co. v. Fulcher*, 221 Ark. 903, 910, 256 S.W.2d 723, 727 (1953). Instead, the question on appeal is not whether the testimony would

SLIP OPINION

have supported a finding contrary to the one made, but whether it is substantial in support of the one made. *Brower Mfg. Co. v. Willis*, 252 Ark.755, 480 S.W.2d 950 (1972).

In addition, it is worth noting that this court has rejected the argument that the Commission is not as equipped as the referee (now administrative law judge), who conducts the hearing, to resolve inconsistencies in the testimony and to determine the credibility of witnesses. *Potlatch Forests, Inc. v. Smith*, 237 Ark. 468, 374 S.W.2d 166 (1964); *see also Parker Stave Co. v. Hines*, 209 Ark. 438, 190 S.W.2d 620 (1945). In so holding, we observed "that it is the duty of the Commission to make a finding according to a preponderance of the evidence, and not whether there is any substantial evidence to support the finding of the Referee." *Potlatch Forests, Inc.*, 209 Ark. at 469, 374 S.W.2d at 167 (quoting *Moss v. El Dorado Drilling Co.*, 237 Ark. 80, 81, 371 S.W.2d 528 (1963)). Building on this principle, this court has held that the findings of the administrative law judge are given "no weight whatever." *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 495, 579 S.W.2d 360, 362 (1979).

Although these standards are by now ingrained in our case law, the majority in this case violates every single one of them. It does not review the evidence in the light most favorable to the Commission's findings. In fact, the majority considers the evidence in the light most unfavorable to the Commission's decision, as it relies on only the evidence presented by Prock in his effort to rebut the presumption. The majority then proceeds to weigh the evidence anew; it adopts the reasoning set forth by the administrative law judge; and it ignores the credibility determinations made by the Commission and its resolution of the conflicting testimony. In short, the majority makes no effort to determine whether reasonable minds


could reach the decision made by the Commission, which is the test of substantial evidence governing our review. Moreover, the majority holds that the evidence supporting the Commission's view that the accident was substantially occasioned by the use of marijuana amounts to speculation and conjecture. This conclusion is completely at odds with the statutory presumption, by which it is *presumed* that the accident was substantially occasioned by Prock's use of marijuana.

The record reveals the following testimony. By all accounts, the explosion occurred sometime between 9:30 and 9:40 a.m. The blast was so powerful that it launched the barrel into the air and over a nearby houseboat and engulfed both Prock and Edmisten in flames, as well as the houseboat. The Marion County Sheriff's Department investigated the explosion. Upon inspection of the barrel, the deputy detected a "very strong odor of gasoline," and he noticed that the plugs on the barrel were intact, "suggesting that they had not been removed or checked." He also surmised that gasoline from the airborne barrel splashed onto the houseboat, causing it to catch on fire.

Coworker Mike Didway confirmed that he saw Prock and Edmisten drinking coffee in the office at 7:00 a.m. that morning. He testified that he saw the men in passing and exchanged greetings with them. Didway stated that neither of them appeared intoxicated, but he admitted that he "was not examining them like a cop would a possible drunk driver." Further, Didway did not see either man in the ninety-minute interval before the explosion. The only person who saw Prock and Edmisten during that time frame was Steve Eastwold. Eastwold testified that he saw them at around 8:30 a.m. Specifically, he said that he had

observed them riding in Prock's personal vehicle coming down a hill from the direction of the highway that led toward town. Eastwold said that there was no work that Prock or Edmisten could have been doing in that area. In describing this encounter, Eastwold said that he yelled and tried to flag them down but that Prock drove past him at first, and then backed up toward him at the shop. Eastwold testified that he asked Prock and Edmisten to retrieve two barrels and to remove the tops from them. He said that he also instructed them to take out the plugs and to make sure that there was no liquid in the barrels. Eastwold testified that, from his observation of the barrel that exploded, this instruction was not heeded. Eastwold further testified that Prock and Edmisten were inside Prock's vehicle when he spoke to them that morning. From his vantage point, he noticed nothing unusual about the men, except that neither one of them would "look at me square."

Both Prock and Edmisten tested positively for marijuana following the accident. Although Prock denied that he had used marijuana on the day of the accident, he admitted that he frequently smoked marijuana, as much as three or four times a week. Prock claimed that he had stopped smoking marijuana two weeks before the accident so that he could pass a drug test at a new job. However, Prock could not immediately recall the full name of the contact person or the business where he was supposedly going to work. The Commission did not believe Prock's testimony.

Prock also denied that he and Edmisten had been riding around in his vehicle that morning during work hours. The Commission did not find this testimony credible either, choosing instead to accept the conflicting testimony of Eastwold, as the Commission had the

right to do.

In addition, Prock claimed that he shook the barrels to determine if there was any liquid inside them, but he stated that he did not open the caps to vent the barrels or to smell what might have been inside. He acknowledged that it would have been safer to open the cap to see what was inside before putting a flame to the barrel.

There was also testimony that others at the marina used an air chisel to remove lids from barrels and that Prock was the only employee who had used an acetyline torch. Eastwold had never seen Prock use a torch to complete this task, and he expressly testified that he had previously instructed Prock to use an air chisel to remove tops from barrels. He maintained that this was the safest method for opening barrels. Prock denied receiving instruction from Eastwold to use an air chisel. However, Greg Aaron, another employee, testified that Eastwold did show Prock how to use an air chisel to perform that task, and he stated that, after Eastwold left the site, Prock commented that it would be faster to use a torch. Aaron also testified that he used an air chisel to remove tops from barrels at his home, saying that an air chisel does not move quickly enough to produce sparks.

Because Prock had marijuana in his system at the time of the accident, it is presumed that the accident was substantially occasioned by the use of marijuana. The question before the Commission was whether Prock sustained his burden of rebutting the presumption. In his effort to rebut the presumption, Prock submitted that he did not smoke marijuana that day; that no one noticed that he was impaired that day or on any other occasion; and that he always used an acetylene torch to open barrels. However, the Commission found that Prock

29



failed to meet his burden. When the evidence is viewed in the light most favorable to the Commission's findings, as this court must, substantial evidence supports the Commission's decision.

Based on this record, the Commission was not persuaded by Prock's self-serving claim that he was not impaired by the use of marijuana at the time of the accident. Prock admittedly smoked marijuana on a regular basis, and the Commission found implausible his explanation for the positive test that he last smoked marijuana two weeks before the accident. The Commission also credited the testimony of Eastwold that Prock and Edmisten were riding in Prock's personal vehicle before the accident and that they were traveling from an area that had no connection with their duties at work. Moreover, both men involved in the accident tested positive for marijuana, which the Commission need not have considered coincidental. The Commission dismissed the coworkers' testimony that Prock did not appear to be intoxicated on that or any other day because none of the coworkers saw him within ninety minutes of the explosion. Although Eastwold did see Prock and Edmisten one hour before the explosion, he did not get close to them but noticed that their behavior was evasive. Even after the explosion, the barrel emitted the strong odor of gasoline. Regardless of whether Prock "habitually" used a torch in the past, by Prock's own admission, he did not even open the cap to vent the barrel or to smell what was inside before applying a torch to it. Just as carelessly, it is apparent that Prock failed to perceive that there was gasoline inside the barrel when he supposedly shook it. It simply cannot be said that substantial evidence is lacking in this case.

In reversing the Commission's decision, the majority recites the standards of review, but it is clear from its analysis that only lip service is given to those settled principles. Obviously, the majority does not accord the deference historically given to the Commission as the finder of fact, and out of displeasure with a perceived unfairness in the Commission's decision, the majority is willing to sacrifice our standards of review and to substitute its judgment for that of the Commission.

BAKER, J., joins.

*Spencer Law Firm*, by: *Frederick S. "Rick" Spencer*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellants.