**FILED**
**May 11, 2018**
**10:47 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Kevin Cox, | ) | Docket No. 2017-06-1932 |
| Employee, | ) | |
| v. | ) | |
| Sonic Automotive, d/b/a Crest Honda, | ) | State File No. 53456-2017 |
| Employer, | ) | |
| And | ) | |
| Hartford Ins. Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

Kevin Cox filed a Request for Expedited Hearing, which this Court heard on May 8, 2018. The central legal issue is whether Crest Honda properly denied Mr. Cox's claim because his injury did not arise primarily out of and in the course and scope of employment. For the reasons below, the Court holds the denial proper and denies the requested relief at this time.

### History of Claim

On the date of injury, Mr. Cox worked at Crest as an oil technician, changing oil and performing other basic vehicle maintenance.

On July 17, 2017, near the end of his workday, Mr. Cox changed into his street clothes and entered the breakroom to retrieve his lunchbox before clocking out. In the breakroom, he saw several coworkers, including Collin Elliott, "horse playing." He said that he and Mr. Elliott "had a few joking words" and were not discussing work. The gist of the banter between Mr. Cox and Mr. Elliott was that, although Mr. Cox is in his fifties, he could still "take down" Mr. Elliot, age twenty-one. According to Mr. Cox, Mr. Elliot then "walked up on me and he grabbed me. We got to tussling, and I broke my leg." Mr. Cox said his right knee "just popped."

Mr. Elliott offered a similar version of the incident, stating that they exchanged a

1

few words and then "squared up," meaning that they stood across from each other with two or three feet between them, raised their arms with open palms, and walked toward each other. Mr. Elliot said, "I put my shoulder in his chest and I put him on the couch." He heard Mr. Cox's knee pop. He acknowledged they were not angry at each other, had not argued earlier in the day, and were not fighting over work tools or duties. Mr. Elliott described the two as "buddies at work."

Crest called several witnesses, who agreed that the interaction between Mr. Cox and Mr. Elliot on the date of injury did not involve malice or violence, nor were they discussing their work duties before or during the encounter. Co-worker Brandon Moore described their words and actions as "talking smack," while another worker, Randy Carte, characterized it as "jaw-jacking" and "grade-school stuff." Mr. Carte further explained that, when no work is available, the workers spend time in the breakroom because they must remain at the dealership for their entire shifts. Supervisor James Wells characterized the general work environment at Crest as "fairly tight" with an emphasis on safety but also said, "We do try to have a good time because nobody wants to go to work and not be happy."

Mr. Cox immediately reported the injury. He initially stated that he slipped in water and later that he tripped on a mat because he did not want Mr. Elliot to get in trouble. A few days later, however, Mr. Cox admitted the horseplay. Crest denied the claim on July 21, citing "injury as a result of horseplay."

As for his medical care, Crest took Mr. Cox to Concentra. When that treatment did not alleviate his pain, Mr. Cox, a former marine, sought a second opinion at the local Veterans Affairs hospital. Ultimately, he underwent knee surgery at the VA after Crest denied his claim. Mr. Cox currently receives physical therapy and believes he needs additional treatment.

Mr. Cox earned no income from the date of injury until December 27. He seeks temporary total disability benefits for that period, plus medical benefits to treat his knee.

### Findings of Fact and Conclusions of Law

Mr. Cox must present sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Specifically, he must show he suffered an injury as defined under the Workers' Compensation Law. That definition requires that an injury must arise primarily out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2017). The Appeals Board cited longstanding Tennessee law when it explained:

"[A]n injury by accident to an employee is in the course of employment if it

2

occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Scarbrough v. Right Way Recycling, LLC,* 2015 TN Wrk. Comp. App. Bd. LEXIS 9, at *10 (Apr. 20, 2015)(Internal citations omitted).

Here, although Crest questioned Mr. Cox's credibility by emphasizing his various versions of how he became injured, Crest ultimately did not dispute that the incident occurred. Rather, Crest argued that Mr. Cox suffered injury while voluntarily engaging in "horseplay," which is an activity neither within the course and scope of employment nor arising primarily within it.[1] The Court agrees in part. Mr. Cox's injury did not arise primarily out of his employment.

Multiple witnesses substantiated that Mr. Cox's and Mr. Elliott's words and actions were friendly throughout the incident. They also agreed the two were not discussing any aspect of their work duties before or during the encounter. Thus, Mr. Cox was not performing a duty that Crest hired him to do when the injury occurred. Rather, he had completed his workday and became sidetracked from retrieving his lunchbox to engage in horseplay with Mr. Elliott. "An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Johnson v. Wal-Mart Assoc., Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *12 (July 2, 2015)(citation omitted). The Court holds that playful banter escalating to the point of physical injury is not a hazard incident to Mr. Cox's work as an oil technician at Crest, since the banter was not generated by a discussion over any matter related to work.

Mr. Cox cited *Borden Mills, Inc. v. McGaha,* 161 Tenn. 376 (Tenn. 1930), to support his claim. In that case, the employee was sitting on a box waiting to start her work duties in a mill when a coworker, "in a spirit of fun," pushed the box. *Id.* at 380. She fell to the floor, suffering injury. The trial court awarded benefits, and the Tennessee Supreme Court affirmed. The justices cited the New York Court of Appeals as follows:

> [I]t was but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age, or even of maturer years, to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common

---

[1] Crest also argued that the Court should not analyze the case using the legal frameworks for willful misconduct or workplace assaults. The Court agrees. Crest did not raise the willful misconduct defense or introduce sufficient proof to support it, and as for workplace assaults, the witnesses agreed Mr. Cox and Mr. Elliott harbored no hostility between them.

3

knowledge to everyone who employs labor.

*Id.* However, the high Court limited recovery to employees who do not participate in the horseplay. *Id.* at 381. Almost three decades later, in *Ransom v. H.G. Hill Co.,* 326 S.W.2d 659 (Tenn. 1959), the Supreme Court broadened *McGaha,* so that even an employee who instigates horseplay may recover for a resulting injury. In *Ransom,* the employee's boss gave a sole instruction for periods of inactivity: do not leave the lot. The trial court found the employee's injuries from horseplay noncompensable, but the justices reversed, quoting Professor Larson:

> If the primary test in horseplay cases is deviation from the employment, the question whether the horseplay involved the dropping of active duties calling for the claimant's attention as distinguished from the mere killing of time while claimant had nothing to do assumes considerable importance. There are two reasons for this: first, if there were no duties to be performed, there were none to be abandoned; and second, it is common knowledge, embodied in more than one old saw, that idleness breeds mischief, so that if idleness is a fixture of the employment, its handmaiden mischief is also.

*Id.* at 663-4. The high Court held the claim compensable but also gave the Workers' Compensation Law a remedial construction to reach that result. *Id.* at 663.

Applying these authorities, the facts surrounding Mr. Cox's injury are distinguishable. The employee in *McGaha* sat on a box at her workstation waiting to start her duties. In contrast, Mr. Cox intended to retrieve his lunchbox, clock out and go home, when the horseplay ensued. Further, Mr. Cox was not "killing time" because he had no work to do, as was the employee in *Ransom.* Rather, his work duties were completed for the day when he made the unfortunate choice to act on Mr. Elliott's challenge. Finally, the Court questions *Ransom's* continued viability, given that the Reform Act did away with the previous remedial construction of the Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-116 ("[T]his chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and this chapter shall not be construed in a manner favoring either the employee or the employer").

In conclusion, as a matter of law, Mr. Cox presented insufficient evidence to establish he is likely to prevail at a hearing on the merits regarding whether he sustained an injury arising primarily out of and in the course and scope of his employment.

4

**IT IS, THEREFORE, ORDERED AS FOLLOWS:**

1. Mr. Cox's requested relief is denied at this time.

2. The Court sets this case for a Scheduling Hearing on **July 9, 2018, at 8:45 a.m. Central Time.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without your further participation.

**ENTERED May 11, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

5

## APPENDIX

**Exhibits:**
1. Kevin Cox Affidavit
2. Denial
3. Wage statement
4. Composite medical records

**Technical record:**
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer and Insurance Carrier's Expedited Hearing Witness and Exhibit List
5. Expedited Hearing Brief of Employer and Carrier
6. Witness and Exhibit List
7. Employee's Expedited Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent to the following recipients by these methods of service on May 11, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Carolina Martin, Employee's Counsel | | | X | cvmartin@hughesandcoleman.com; sconner@hughesandcoleman.com |
| David Deming, Employer's Counsel | | | X | ddeming@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____
**Employee**

_____
**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**
**Type of Case** [Check the most appropriate item]

☐  Temporary disability benefits
☐  Medical benefits for current injury
☐  Medical benefits under prior order issued by the Court

**List of Parties**
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant] _____

LB-1099   rev.4/15                         Page 2 of 2                         RDA 11082



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | |
|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries    $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation    $ _____ per month    Child Support    $ _____ per month

Car    $_____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)      RDA 11082